**Ex parte Lori Diane RAY and Steven Ray, Arthur W. Van Meter and Lorene Van Meter, Larry Gene Ray.**

**No. KCD 30356.**

Missouri Court of Appeals, Kansas City District.

Oct. 30, 1978.

Theodore M. Kranitz, Kranitz & Kranitz, St. Joseph, for petitioner.

Thomas R. Summers, Shoemaker, Summers & Fenner, St. Joseph, for respondents.

Before SWOFFORD, C. J., and SHANGLER, DIXON, PRITCHARD, WASSERSTROM, SOMERVILLE and TURNAGE, JJ.

SWOFFORD, Chief Judge.

This proceeding was instituted in this Court on July 27, 1978 by the filing of a petition for a writ of habeas corpus by Larry Gene Ray, the natural father of Lori Diane Ray, 9 years of age, and Larry Steven Ray, 8 years of age, who, he alleged, were being unlawfully restrained of their liberty by their maternal grandparents, Arthur W. Van Meter and Lorene Van Meter. The children's natural mother, Barbara Kay Ray, had been killed in an automobile accident on May 31, 1978. A writ of habeas corpus was issued by this Court on July 27, 1978, the five-day notice rule and the production of the bodies of the children were waived, and the Van Meters were ordered to make return to said Writ on or before

August 7, 1978 and to attach thereto a true and authenticated copy of the transcript of all previous proceedings had on July 26, 1978 in a habeas corpus proceeding in the Circuit Court of Buchanan County. The return was filed on August 7, 1978 and the petitioner filed a motion to strike the return together with his traverse to such return. It clearly appeared from these pleadings that there were disputed issues of fact, so on August 17, 1978, this Court appointed the Honorable J. Donald Murphy as Master, pursuant to Rule 68.03, to hold an evidentiary hearing on the issues thus presented. The Master filed his oath as required by law and conducted such evidentiary hearing on August 23, 1978, which was recorded. This hearing included an in chambers interview with each of the two children involved separately with counsel and a reporter present.

On September 7, 1978, the Master filed his Report containing his findings of fact and conclusions of law and recommendations as provided by Rule 68.03, the same being in substantial part as follows:

### "REPORT OF MASTER

In this original habeas corpus proceeding petitioner seeks custody of his two minor children presently in the de facto custody of respondents. By order of the Missouri Court of Appeals, Kansas City District, dated 17 August, 1978, the undersigned was appointed Master to take and report evidence and make findings of fact and conclusions of law. Pursuant to such order a hearing was held on August 23, 1978, at which witnesses were heard and exhibits introduced. By stipulation of counsel the transcript of the testimony before the Honorable Frank D. Connett, Jr., Judge, Fifth Judicial Circuit, on July 26, 1978, was received in evidence. The testimony at the August 23 hearing before the Master was recorded but not transcribed.

Respondents are the maternal grandparents of the minor children and assumed actual custody of the children upon the death of their mother on May 31, 1978. The mother had been awarded custody of the children at the time the parents were divorced in 1974. Respondents in their return to the writ of habeas corpus assert that petitioner is not a fit, competent or suitable person to have custody of the children because (a) he is a 'regular user of marijuana and has stolen items from merchants'; (b) he has 'an unstable life-style characterized by five marriages and currently being married to a teenager'; (c) he has 'exhibited cruelty' toward the children; (d) and he 'lacks the maturity to care for the children in that he is subject to violent outbursts of temper'.

Petitioner concedes that respondents are fit, competent and able to provide a suitable home for the minor children.

### Findings of Fact

1. Petitioner Larry Gene Ray is the natural father of Lori Diane Ray and Larry Steven Ray, infants of the ages of 9 and 8 years respectively.

2. Respondents, Arthur Warren Van Meter, aged 56, and Lorene Van Meter, aged 56, are the maternal grandparents of the children.

3. Barbara Van Meter Ray, natural mother of the children, in whose custody they were pursuant to a decree of dissolution of marriage, died on 31 May, 1978 as a result of an automobile accident.

4. Upon the death of their daughter, respondents, without benefit of any court order, took the children into actual custody, and have so kept them against the demand and without the consent of petitioner.

5. Petitioner was married to one Lori Palmer, aged 19, on 12 February, 1978. Within five days after the death of his former wife, he embarked upon the purchase of a suitable home for his family, and on 14 July, 1978 closed the transaction. On Friday, 19 July, petitioner telephoned respondents to arrange transfer of actual custody, and was told by the respondents that they had decided to keep the children.

6. Petitioner now has an adequate home in which to raise his children. His present wife's character and reputation have not been questioned. Petitioner is a self-em-

ployed carpet layer, and earns sufficient money to feed, clothe, shelter, and educate his children.

7. Petitioner is not now a regular user of marijuana and since at least February, 1978 has not been a user at all. He admits that during his marriage to Barbara Van Meter Ray, and continuing until shortly before his present marriage to Lori Palmer Ray, he used marijuana on a frequency of 'probably once a week', but never in the presence of his children. Both Lori Diane and Larry Steven testified in chambers that they never observed their father smoke anything other than ready-made cigarettes taken from a pack. In any event, neither petitioner nor his wife presently have any connection with marijuana use.

8. There is insufficient credible evidence to sustain the allegation that petitioner has stolen items of merchandise. Jacki Rowlett, who was twice married to and divorced from petitioner, testified that sometime between the year 1975 and the month of October, 1977 while she was married to petitioner, he 'occasionally' stole 'small items that would fit in his pocket' such as razor blades and Kool-Aide, from grocery stores. She also testified that petitioner told her about other unspecified items he had stolen. There is no corroboration of her testimony in the record. Petitioner denied such stealing. The testimony of the witness Rowlett is so indefinite as to time, place and circumstance as to be entitled to little credence in the face of the categorical denial by petitioner.

9. Petitioner was married four times previously to three different women (twice to the witness Jacki Rowlett). Petitioner's present circumstances show him to be industrious, a good provider, neither a drinker ('perhaps one drink a year') nor a smoker ('maybe one or two cigarettes a week'). His present wife is manager of the display department at Montgomery Ward in St. Joseph. She is neither a drinker, nor a smoker, and appears to be sufficiently mature and competent to care for the children in the family home. The present home and life-style appear to be stable, and the evidence produced no presently existing conditions to the contrary.

10. The evidence does not support the allegation that petitioner has exhibited cruelty toward his children. The witness Lorene Van Meter, the maternal grandmother, testified that on one occasion after petitioner had been playing with the children she saw red marks on Steven's throat and was told by Steven that petitioner had had him on the ground with a ball bat across his throat. The witness Gyneth Snyder, babysitter, testified that, while looking through a closed window she had seen petitioner on occasion, while at play with the children, strike Steven on the arms, head and shoulders with his fist; that Steven would come in to the house crying and sometimes later complained of headaches. She never saw petitioner strike Lori but observed him 'play rough' with her when they were 'wrestling and playing around'. The children confirm the incident of the baseball bat, but from their account it appears to have been over-enthusiastic roughhouse while at play and not an act of cruelty to children. The testimony is vague and inconclusive and does not establish by substantial evidence any pattern of cruelty to children on the part of petitioner. On the contrary, the children themselves, individually and separately, testifying in chambers, expressed love for their father, no fear of him or of living with him, and indicated that he has never exhibited cruelty or imposed excessively severe discipline on them.

11. The allegation that petitioner 'lacks the maturity to care for the children, in that he is subject to violent outbursts of temper', is largely unsupported by credible evidence and respondents have failed to carry their burden of proof on the issue. Jacki Rowlett testified that petitioner had a very short temper, got mad easily and 'threw things' while on the job. She said she accompanied petitioner on his job as carpet layer 'occasionally'; that what he threw was usually 'some kind of carpet tool'; that she could not remember him throwing things at home. The witness Kerry Mack, a friend of Barbara Ray, the de-

ceased mother, testified she witnessed a scene in which petitioner in a fit of anger threw a sack of groceries against the wall, in the presence of Barbara and the children. Respondent conceded he had a temper and becomes angry but denied throwing things and specifically that he threw the sack of groceries (which he said contained four rolls of toilet paper and a can of tuna). He gave a somewhat different version of the incident. The children testified that they had never seen any violent display of temper by their father in their presence either toward them or toward their late mother. Assuming that 'lack of maturity' is a valid legal ground for denying petitioner custody of his children [See Conclusions of Law, paragraph 6 that it is not] the testimony about petitioner's 'violent temper', in the opinion of the Master, does not establish any lack of maturity (whatever that means) by sufficiently clear and cogent evidence, and it follows that there is a failure of proof on the point.

12. On the whole case, no presently existing circumstance has been shown in the evidence to support depriving petitioner of custody of his children. Respondents have not carried their burden of proof.

### Conclusions of Law

1. This cause is properly before the Court in the exercise of its original jurisdiction. Mo.Const., Art. V, § 4, *Ex parte McCarter,* 434 S.W.2d 14 (Mo.App.1968).

2. The writ of habeas corpus is properly invoked where as here, a natural parent seeks to obtain custody of his children who are held by grandparents or other strangers without court order. 39 Am.Jur.2d 179, 181, 183–184.

3. The issue here is not which of the contenders for custody would provide the better home. That question is wholly irrelevant to these proceedings. Petitioner has a primary right to custody of his children as against all the world. *State ex rel. White v. Swink,* 241 Mo.App. 1048, 256 S.W.2d 825, 829 (1953); *Cox v. Carapella,* 246 S.W.2d 513, 514 (Mo.App.1952); *McDevitt v. Morrison,* 180 S.W.2d 608, 611 (Mo.App.1944);

*State ex rel. Crockett v. Ellison,* 271 Mo. 416, 196 S.W. 1140 (Mo. banc 1917). He is clothed with a presumption of law that the best interests of his children are served in his custody as surviving parent, absent a showing of some special and extraordinary reason why he should not have custody. *Weir v. Marley,* 99 Mo. 484, 12 S.W. 798, 800 (Mo.1890); *State ex rel. Crockett v. Ellison,* supra, l.c. 1142; *Cox v. Carapella,* supra; *Ex parte De Castro,* 238 Mo.App. 1011, 190 S.W.2d 949, 959 (Mo.App.1945).

4. Respondents do not hold Lori Diane Ray and Larry Steven Ray by virtue of any adoption decree or other court judgment or order. The burden of proof of petitioner's unfitness is upon respondents. *Williams v. Williams,* 240 Mo.App. 336, 205 S.W.2d 949 (Mo.App.1947); *Cox v. Carapella,* supra.

5. That petitioner has had a varied, checkered and unstable marital history is insufficient to deprive him of custody of his children. *Cox v. Carapella,* supra.

6. The only test by which determination can be made is whether petitioner has forfeited his right to custody for any of the reasons set out in Sections 211.031 or 211.441 RSMo 1969; *In re Shepler,* 361 S.W.2d 354, 360 (Mo.App.1962); *Cox v. Carapella,* supra; and the determination must be made with respect to present, existing conditions, with evidence of past conditions being material only to the extent that they clarify and cast light on existing conditions. *Ex parte De Castro,* supra, l.c. 190 S.W.2d 959; *Cox v. Carapella,* supra, l.c. 517. As a matter of law, no condition set out in Sections 211.031 or 211.441 RSMo 1969 has been shown in the evidence: Petitioner has neither neglected nor refused to provide proper support, education, medical care, or other necessities; the children are not otherwise without proper care or support; the behavior, environment, or associations of the children neither are nor will be injurious to their welfare or the welfare of others; and the children have not violated any law.

7. That petitioner heretofore used marijuana but no longer does so does not consti-

tute a present, existing condition warranting deprivation of custody. *Downing v. Downing*, 537 S.W.2d 840, 844 (Mo.App. 1976).

8. Respondents have not, as a matter of law, sustained their burden of proof. Their allegations against petitioner, to the extent that they are otherwise relevant, do not rise to the challenge of Sections 211.031 and 211.441 RSMo 1969 and cannot be sustained. A habeas corpus proceeding cannot be converted into a neglect proceeding, to oust the juvenile court of its exclusive statutory jurisdiction. *State ex rel. White v. Swink,* supra; *In the Interest of Dimmitt,* 560 S.W.2d 368, 370–372 (Mo.App.1977)."

Thereafter and on September 25, 1978, the respondents Van Meter filed their exceptions to the report of the Master, which exceptions were overruled by the Master on September 25, 1978, all as provided by Rule 68.03. The parties hereto having previously fully briefed this case, the same was submitted to and orally argued before this Court en banc on October 3, 1978.

■ In this state of the record, the Master's Report is to be accorded the weight and deference which would be given to a court-tried case by a reviewing court. *In the Matter of W_____ K_____ M_____,* 537 S.W.2d 183, 186[5] (Mo.App.1976).

■ The record in this case having been fully reviewed and the briefs studied, it is the judgment of this Court that the Master's Report, above set forth, is fully supported by both the law and the evidence and is the proper result of these proceedings, and it is hereby adopted in toto as the opinion of this Court herein.

In accordance therewith, it is the decree and mandate of this Court that the care and custody of Lori Diane Ray and Larry Steven Ray be and is hereby placed with their natural father, Larry Gene Ray, under the Writ of Habeas Corpus herein, and that the physical custody of said minor children be immediately and forthwith transferred to their natural father, Larry Gene Ray, with all and sundry concomitant legal rights and obligations of parent and children.

It is further ordered that the petitioner's, Larry Gene Ray's motion to strike the return herein is sustained as to Paragraphs 2(a), the last clause thereof relating to stealing only; 2(b); and 2(d) of such return.

The costs of these proceedings, including the bills of Howard Rittmaster and Associates, for the preparation of transcripts in the amounts of $142.50 and $158.90, and of Charles E. Bumgardner for the preparation of a transcript in the amount of $84.00, are taxed against respondents Arthur W. Van Meter and Lorene Van Meter, who are ordered to file with the Clerk of this Court appropriate receipts evidencing the payment of such costs and expenses.

All concur.