751 S.W.2d 772 (1988)
In the Interest of Joshua David FEEMSTER, a minor.
Karen Sue GISH, Petitioner-Appellant,
v.
Idris E. GISH, and Mary E. Gish, Respondents-Respondents.
No. 15057.
Missouri Court of Appeals, Southern District, Division Two.
May 13, 1988.
Motion for Rehearing or to Transfer Denied June 7, 1988.
C. William Lange, Cuba, for petitioner-appellant.
Martin Mazzei, Mazzei and Broshot, Steelville, for respondents-respondents.
FLANIGAN, Judge.
Appellant Karen Sue Gish filed this habeas corpus action against respondents Idris E. Gish and Mary Elaine Gish, his wife, in the Circuit Court of Crawford County. The petition alleged that respondents were restraining, in Crawford County, the liberty of Joshua David Feemster, who was almost seven years old. Karen is the natural mother of Joshua and Idris Gish is Karen's natural father.
Respondents' answer admitted that Joshua was living in their home. The answer *773 alleged that Karen was unfit to care for and maintain Joshua. The trial court, after a lengthy evidentiary hearing, made findings of fact, found the issues generally in favor of respondents, and denied the petition. A guardian ad litem represented Joshua throughout the proceedings. Karen appeals.
Although Karen presents six points on appeal, basically her position is that the trial court erred in denying her the custody of Joshua because no extraordinary circumstances existed which warrant that denial and that the trial court erred in finding that Karen had abandoned Joshua. Karen also claims that the trial court erred in "relying on" the testimony of her brother James Gish. Finally, Karen claims that respondents failed to prove that she was an unfit parent.
There is a rebuttable presumption that a natural parent is a fit and qualified custodian of her minor child. In Interest of K.K.M., 647 S.W.2d 886, 889[10] (Mo. App.1983); M.P.M. v. Williams, 611 S.W.2d 274, 277[4] (Mo.App.1980); Ex Parte Ray, 573 S.W.2d 152, 155 (Mo.App.1978). The natural parent is not to be denied custody unless there is a showing that the parent is unfit or incompetent or that the welfare of the child, due to special or extraordinary circumstances, demands that custody be granted to one other than the natural parent. In re B.W.D., 725 S.W.2d 138, 139 (Mo.App.1987); In Interest of K.K.M., supra; Ex Parte Ray, supra. The burden of proof was on respondents to rebut the presumption. M.P.M. v. Williams, supra; Ex Parte Ray, supra; In re Richardet, 280 S.W.2d 466, 471[7] (Mo.App.1955).
A parent's right to custody of her minor child is determined by existing conditions. Past conditions are material only to the extent that they clarify and cast light on existing conditions. Ex Parte Ray, supra; In re S____, 306 S.W.2d 638, 641[2] (Mo.App.1957); In re Richardet, supra; Cox v. Carapella, 246 S.W.2d 513, 515[5] (Mo.App.1952). The welfare of the child is the paramount consideration. In re Duncan, 365 S.W.2d 567, 571 (Mo. banc 1963); In re B.W.D., supra; In Interest of K.K.M., supra; G.C.J. v. G.G., 510 S.W.2d 193, 195[4-6] (Mo.App.1974); B.S.P. v. W.W.W., 411 S.W.2d 834, 835[1] (Mo.App. 1967). "All things being equal" custody should be awarded the natural parent. Ex Parte Ferone, 267 S.W.2d 695, 700[2] (Mo. App.1954); Stricklin v. Richters, 256 S.W. 2d 53, 56[4] (Mo.App.1953).
An agreement of the natural parent that the child shall remain in the custody of a third person is not binding. Sherrill v. Bigler, 276 S.W.2d 473, 477[5] (Mo.App. 1955); Ex Parte Ferone, supra; Cox v. Carapella, supra. "[T]here is no doctrine of right by adverse possession in the custody of children." In re Wakefield, 365 Mo. 415, 283 S.W.2d 467, 473[13] (1955). The issue is not which side would provide the better home for the child. Ex Parte Ray, supra.
For the reasons which follow, this court holds that the trial court's order denying Karen relief on her petition is supported by substantial evidence and is not against the weight of the evidence. This court further finds that the trial court did not declare or apply the law erroneously. Rule 73.01, V.A.M.R. Murphy v. Carron, 536 S.W.2d 30, 32[1-3] (Mo. banc 1976).
Petitioner Karen Gish was 24 years old when the trial court held its hearing in June 1986. Respondent Idris Gish was then 52 and his wife, respondent Mary Gish, was 38. Idris and Karen's mother were divorced in 1969 and Karen and her two brothers, James Gish and Allen Gish, lived with Idris following the divorce. In 1972 Idris married his present wife, Mary Gish.
In 1976 or 1977 Karen went to California to live with her mother, now Patricia Denton, and Karen lived with her off and on for two years.
In September 1978 Karen married James Feemster, the father of Joshua. Feemster and Karen separated in 1978 and their marriage was dissolved in 1979. Feemster saw Joshua a time or two when Joshua was an infant, but never supported him. Feemster became a deserter from the Navy.
*774 Joshua was born August 8, 1979. At that time Idris and Mary Gish were living in Colorado and Karen brought Joshua to their home and remained there for several weeks. In the fall of 1979 Karen took Joshua to California where they stayed with Karen's mother. Before Thanksgiving of 1979 Karen telephoned Idris and said, "If you want this baby [Joshua] come and get him because I can't take care of him." Mary Gish went to California and brought Joshua back to the home in Colorado. There Joshua lived with Idris and Mary until October 1984, when the trio moved to Leasburg, Missouri. Joshua has made his home with Idris and Mary Gish since he was a few months old.
Karen enlisted in the Navy and attended boot camp in Florida from March to May 1980. After graduating from boot camp, Karen flew to Colorado where she spent two days in her father's home. She then went to Georgia where she was stationed. She remained in the Navy for approximately one year.
In March 1981 Karen married Terry McGraw who was in the Navy. There was evidence that Terry McGraw is a homosexual. Karen was discharged from the Navy in March 1981 because she was pregnant. That child, Shawn McGraw, was born in September 1981. During the summer of 1981 Karen told her father and her stepmother that she wanted them to adopt Joshua. Over the ensuing years Karen made that statement several times.
In 1983 Karen and Terry McGraw were divorced. Karen lived for a time that year in Colorado with Idris and Mary Gish. On one occasion Karen, who has a violent personality, kicked Idris in the left hip and also kicked her baby, Shawn, in the mouth. During this period Karen lived with a man named Nelson and another man named Arnold. Idris Gish testified that over a period of years Karen had lived with 16 men in addition to her two husbands.
The trial court made the following finding, which Karen does not dispute: "Since her discharge from the U.S. Navy in 1981, Karen has been employed at various and sundry occupations in Colorado and California, including the occupations of go-go dancer and topless dancer for a period of approximately two years, and has changed her residence a number of times despite the protestations of her father Idris Gish."
In 1984 Idris Gish went to California to pick up Shawn McGraw and bring him to Colorado for a month. On June 11, 1984, Karen signed a form entitled "Consent to Adoption," by the terms of which she consented to the adoption of Joshua. That form was to be used in connection with an adoption proceeding instituted in Colorado by Idris and Mary Gish, but apparently that proceeding was not prosecuted to final decree.
In October 1984 Idris and Mary Gish, together with Joshua, moved to Missouri. Shawn McGraw stayed with them between Thanksgiving and Christmas. When Karen came to pick up Shawn at Christmas, she stayed there less than a day. At that time Karen spent "little time" with Joshua and again inquired about Idris and Mary adopting Josh. This was the last time, prior to the institution of the habeas corpus proceeding, that Karen saw Joshua. According to one witness, Karen made the statement that she was glad Idris and Mary had Joshua because she, Karen, couldn't handle him.
In February 1985 Idris visited Karen in California. Karen was then living, with her baby Shawn, in Karen's one-bedroom apartment with three male sailors. That arrangement continued for several months. In March 1985 Idris and Mary Gish instituted, in Missouri, a proceeding to adopt Joshua. Apparently that proceeding is still pending. In May 1985 Idris sent Karen another form containing her consent for the adoption of Joshua. That month, during Karen's last conversation with her father, she told him she wanted $500. In August 1985 Karen filed the habeas corpus proceeding.
In May 1986 Karen graduated from an academy operated by the California Department of Corrections and went to work at a men's prison in San Luis Obispo. There she is a correctional officer and she supervises the inmates.
*775 Several of the findings of fact made by the trial court are not challenged by Karen. They include the following: Idris Gish has an income sufficient to provide for the physical needs of Joshua; Idris Gish and Mary Gish are in good health and they engage in numerous social activities with Joshua, including fishing, camping, little league baseball, church activities and school activities; Idris and Mary Gish have cared for Joshua, and Joshua has resided with them for most of his life; until shortly before the habeas corpus hearing, Joshua believed that Idris and Mary Gish were his natural parents and called them "Dad" and "Mom"; Karen has stated that she did not want to raise Joshua and that Idris and Mary Gish should raise him; Karen has encouraged the practice of Joshua referring to Mr. and Mrs. Gish as "Mom" and "Dad" and referring to her as "Karen"; Karen has fostered the belief in Joshua that she is his sister rather than his mother.
The trial court also made these unchallenged findings: "For periods of time from 6 months to 14 months during Joshua's life, Karen has failed and refused to communicate with, visit, or provide support for Joshua; during the course of Joshua's life, Karen has contributed no more than a few hundred dollars and several small gifts to pay for his upkeep and maintenance; difficulties arose between Karen and Terry McGraw when she learned he was a homosexual; Terry McGraw has significant contact with Karen and the minor child Shawn McGraw, and Karen testified that if she were awarded custody of Joshua, Terry McGraw would have contact with Joshua; the Crawford County Division of Family Services has done a home study of Idris Gish, Mary Gish, and Joshua, observed the home, interviewed significant persons, and found that it is in the best interest of Joshua that he remain in the custody of Idris and Mary Gish and has recommended to the court that Joshua be adopted by Idris and Mary Gish; Idris and Mary Gish have raised [Joshua] from an infant, loved him, nursed him through his childhood illnesses, given him moral and religious training, and have established a loving and caring environment for said child; [Joshua] is doing well in school in the Crawford County school system, is well adjusted to life in the rural Crawford County setting, and views his relationship with Idris and Mary Gish as a loving parent/child relationship; it would be in the best interest of the child Joshua, that he continue to live with Idris and Mary Gish."
The trial court also found: "There exist special and extraordinary factors that compel the court to find that regardless of the fitness or competence of the natural mother, custody of the child should be vested in the natural grandfather and step-grandmother."
Karen's various points on appeal will be briefly discussed. The trial court made the statement in its findings that Karen "abandoned Joshua in November 1979, when Mary Gish went to California, at Karen's request, to bring Joshua back to Colorado." It is clear that the trial court used the word "abandon" in its general sense rather than in the technical sense that might justify a termination of parental rights based solely upon Karen's conduct at that time.
James Gish, Karen's brother, did come from California to Missouri at his own expense in order to testify at the hearing. In general his testimony was adverse to Karen, whom he described as being "very violent" and having a split personality. He said that Karen "seldom tells the truth." Karen seeks to challenge the weight of his testimony on the ground that it was "admittedly biased, based on hearsay, uncorroborated and indefinite as to time, place or circumstances." This court has reviewed that testimony in light of her complaints and finds the trial court did not err in receiving that evidence. Karen's brother, Allen Gish, gave somewhat similar testimony. Moreover, the trial court's order is fully supported by other evidence.
Although Karen claims that respondents failed to prove that she was an unfit parent, that claim overlooks the following principle, stated in In Interest of K.K.M., supra, 647 S.W.2d at 890: "[T]he presumption which favors vesting of custody in the natural parent must fall whenever the best *776 interests of the child, for some special or extraordinary reason or circumstance, mandate that custody be vested in third persons, regardless of whether the evidence establishes the unfitness or incompetence of the natural parent."
Except for the first three months of his life, Joshua has received only a minimal amount of maternal care or interest from Karen. From his infancy to the commencement of this habeas corpus proceeding Joshua has been for all practical purposes the child of Idris and Mary Gish. The trial court found, in essence, that the welfare of Joshua, due to special or extraordinary circumstances, demanded that Karen's petition for his custody be denied. This court's review of the voluminous record leads it to the conclusion that the trial court ruled properly in denying the petition.
The order of the trial court, denying the petition for a writ of habeas corpus, is affirmed.
PREWITT, P.J., and MAUS, J., concur.
HOGAN, J., not participating.