In re the MARRIAGE OF Robin
Lynn POWELL and Arnold
Dean Powell.

Robin Lynn Powell HONEA,
Petitioner–Respondent.

v.

Arnold Dean POWELL, Respondent–
Appellant,

v.

Herman HAM and Betty Ham,
Intervenors–Respondents.

No. 20544.

Missouri Court of Appeals,
Southern District,
Division One.

May 16, 1997.

Rehearing Denied June 10, 1997.

On Amended Motion for Rehearing
June 10, 1997.

Donald Rhodes, Bloomfield, for respondent–appellant.

James E. Spain, Poplar Bluff, Veryl L. Riddle, Dan M. Lesicko, St. Louis, for petitioner–respondent.

Before BARNEY P.J., and PREWITT and GARRISON, JJ.

PER CURIAM.

Arnold Powell (Father) appeals from a judgment awarding custody of his two children to their maternal grandparents. That judgment followed an extensive history of disputes between Father and Robin Lynn Powell Honea (Mother) concerning the children, and presents yet another example of the difficulty encountered by courts in attempting to resolve custody issues while maintaining a focus on the best interests of the children.

A March 12, 1991 decree dissolved the marriage of Father and Mother and awarded primary custody of their two children (Dustin and Jacqueline) to Mother with specified visitation privileges to Father. In March, 1993,

Father filed a motion to modify the decree in which he sought custody of the children, alleging that Mother was denying him his visitation privileges. He also sought to have her held in contempt. Mother filed a counter-motion to modify seeking to terminate or further restrict Father's visitation privileges, and to increase child support. Both motions were denied on August 13, 1993, but the court admonished Mother that "any further restrictions on the [Father's] visitation privileges that [Mother] chooses to impose without Order of the Court will be dealt with accordingly."

On May 17, 1994, Father sought custody of the children in another motion to modify in which he alleged that Mother had prevented his visitation on May 13 and had been influencing the children against him. He also sought to hold her in contempt. Mother filed a counter-motion to modify, again seeking to terminate or limit Father's visitation and to increase child support. To the trial court's credit, it responded quickly by hearing evidence on the motions on July 15 and 18, 1994 and entering findings and orders on July 22, 1994.

In its findings, the court noted that Mother and Father had each remarried, and that Father's wife had two children who lived with them. It also found that Dustin had been injured by a power water sprayer in September, 1993, had been diagnosed as being hyper-active, had a possible learning deficit disorder, and was receiving counseling and medical treatment for his difficulties. The evidence presented to the trial court in connection with those motions is not in the record before us, but we gather from the court's findings that an issue existed as to whether Father was operating the power washer when Dustin was injured or whether he had turned it over to his step-son. Nevertheless, the trial court found that Father "placed his child in harm's way, and while the physical injury was apparently minor ... the emotional injury to Dustin, occasioned by [Father's] attempts to evade responsibility by blaming his step-son, was apparent." It also found, however, that Mother had used the incident to create in Dustin a fear of Father, to Dustin's emotional detriment.

The trial court also found, as substantial, evidence presented by a mental health therapist that Dustin's emotional and psychological health would be harmed by unrestricted and unsupervised visitation with Father. It directed the juvenile officer to make random visits to the homes of Mother and Father to determine the physical and emotional environment of the children, and to monitor compliance with the court's orders. It awarded Father specified visitation privileges, but said:

> PROVIDED, that all such visitation shall be under the supervision of the Juvenile Officer ... until such time as the Juvenile Officer, after consulting with [Dustin's mental health therapist], determines that supervision is not necessary, and obtains an order of the court removing the requirement that such visitation be supervised. Such visitation shall also be conditioned on [Father] providing proof to the court, through the Juvenile Officer, that he has obtained, or is obtaining, counseling and/or treatment in aggression management, anger abatement, reality awareness, personal responsibility and other parenting skills as are deemed necessary by the Juvenile Officer.

Mother was also found to be in contempt, and the court set sentencing for October 4, 1994.

After learning of the court's findings and orders of July 22, Mother, along with her husband and the children, were driven to Little Rock by Mother's father where they caught a plane for Utah. Because the purpose of the trip was to prevent Father from exercising his visitation privileges with the children, he was not told they were going, and did not know for several months where they were. Mother also failed to appear on October 4, as ordered by the court. At one point in October, she hired an attorney in Utah, with the financial assistance of her parents, and filed an action in that state seeking custody of the children. Father hired an attorney in Utah to defend that action and also expended funds on a private investigator in an attempt to locate his children. Mother's Utah attorney eventually

convinced her to return to Missouri, which she did in December, 1994.

On December 1, 1994, Father filed his third motion to modify in which he sought custody of the children and termination of his child support obligation. He later amended his motion to also seek reimbursement of his expense in locating the children in Utah, in defending the suit brought in that state by Mother, and for his attorneys' fees incurred in connection with the amended motion to modify. Mother's parents, Herman and Betty Ham (Intervenors), filed a motion to intervene which was sustained on December 29, 1994 when Mother appeared for the purpose of being punished for the July 22 order holding her in contempt.[1] Following that court appearance, Mother and her husband returned to Utah, leaving the children with Intervenors, who filed their motion seeking custody of the children.

Intervenors permitted Father to exercise his visitation rights with the children until April 6, 1995, when they notified him that those rights were being terminated until he complied with the conditions imposed by the court's order of July 22, and obtained approval by the court. Accordingly, Father was not permitted to see his children from then until the court heard the pending motions on July 7, 1995 (the trial).

Following the presentation of evidence, the trial court entered its judgment, from which Father appeals, denying his amended motion in its entirety, and awarding primary custody of the children to Intervenors. In that judgment, Father and Mother were each awarded specific visitation privileges. On this appeal, Father contends that the trial court erred in awarding custody to Intervenors because it was against the weight of the evidence, was an abuse of discretion, and because there was no substantial evidence to rebut the presumption that a natural parent should be awarded custody instead of a third party. He also complains that the trial court should have awarded him his attorneys fees and expenses in enforcing his visitation rights, in responding to Mother's suit in Utah, and in finding his children when they were hidden by Mother.

The applicable standard of review, by which we are bound, is of particular significance in understanding the decision which we have concluded, after a thorough search of the record, must be reached on this appeal. This includes the principle that the decision of the trial court will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976); *Baker v. Baker*, 923 S.W.2d 346, 347 (Mo.App. E.D.1996). The trial court's determination in child custody matters must be given greater deference than in other cases. *Wilson v. Wilson*, 873 S.W.2d 667, 670 (Mo.App. E.D.1994). The trial court has broad discretion in determining matters involving child custody, and that decision will be affirmed unless the appellate court is firmly convinced that the welfare of the children requires a different disposition. *P.L.W. v. T.R.W.*, 890 S.W.2d 688, 690 (Mo.App. S.D.1994). We are to presume that the trial court awarded custody in the children's best interests, due to its superior position in judging the credibility of the witnesses, along with their character, sincerity, and other intangibles not completely revealed by the record. *Sisk v. Sisk*, 937 S.W.2d 727, 730 (Mo. App. S.D.1996). "The trial court is free to believe or disbelieve all, part or none of the testimony of any witness." *Id.* In reviewing an award of custody, the appellate court presumes that all evidence was considered by the trial court, and it should not substitute its judgment for that of the trial court so long as there is credible evidence upon which the trial court can formulate its beliefs. *In re Marriage of Patroske*, 888 S.W.2d 374, 383–384 (Mo.App. S.D.1994).

Father's first three points on this appeal are interrelated. In the first, he contends that in the absence of unfitness, unsuitability or inability of a natural parent, custody should be awarded to third parties only if

---

1. She was punished in the amount of child support which Father had not paid from the date of the July 22 order until December 29, 1994.

special and extraordinary reasons exist which leave no doubt that the best interests of the child requires it. He argues that this case presented no substantial evidence of special and extraordinary reasons to rebut the presumption in favor of the natural parent. In his second point, he contends that the judgment was against the weight of the evidence and was an abuse of discretion because the evidence indicated that he was the fit and proper person to have primary custody of the children. In the third point, Father contends that the trial court abused its discretion because the evidence demonstrated that it was in the best interests of the children for custody to be awarded to him.

■ There is a rebuttable presumption that a natural parent is a fit and qualified custodian of a minor child. *In Interest of Feemster,* 751 S.W.2d 772, 773 (Mo.App. S.D. 1988). The polestar guiding the resolution of custody disputes, however, is the best interests of the child. *In Interest of K.K.M.,* 647 S.W.2d 886, 892 (Mo.App. E.D.1983). In addition to cases where there is a finding that a natural parent is unfit or unsuitable to have custody of a minor child, custody may be awarded to third parties where there are special or extraordinary reasons or circumstances mandating that result. *Id.* at 890. *See also Giesler v. Giesler,* 800 S.W.2d 59, 62 (Mo.App. E.D.1990); *In Interest of Feemster,* 751 S.W.2d at 775–776. Section 452.375.4(3)(a)[2] also authorizes an award of custody to a third party by providing:

(3) Third party custody or visitation:

(a) When the court finds that each parent is unfit, unsuitable, or unable to be a custodian, or the welfare of the child requires, and it is in the best interests of the child, then custody, temporary custody or visitation may be awarded to any other person or persons deemed by the court to be suitable and able to provide an adequate and stable environment for the child
. . .

■ There was considerable testimony at trial concerning eight year old Dustin, and five year old Jacqueline, including their special needs. Jacqueline Powell had been diagnosed as being mildly to moderately autistic. The evidence indicated that she was in need of extensive therapy as well as personal attention. Jacqueline had shown progress as a result of the services of a therapist who had been retained by Mother prior to moving to Utah. While in Utah, she did not receive therapy and her condition deteriorated. When she was left with Intervenors, however, they procured the services of the original therapist, with the result that she had again shown improvement.

The evidence also indicated that Intervenors had devoted considerable effort and expense to caring for the two children. They made extra efforts to engage Jacqueline in activities that were advantageous to her therapy. Dustin was taken to a counselor, participated in Little League baseball and Boy Scouts, fished with his grandfather, and engaged in projects with his grandfather such as building a tree house and a dune buggy. Contrary to Dustin's history of poor school attendance and performance, he was then attending school regularly and had made the merit roll. Both children were being taken to church on Sundays. There was no direct evidence that the children's living environment with Intervenors was detrimental to their health or well-being.

The trial court's judgment was lengthy and detailed, and included findings of fact and conclusions of law. It concluded that exceptional circumstances existed which overcame the presumption or preference in favor of the natural parents, and that the best interests of the children required that their primary custody be awarded to Intervenors.

The court found that in the four years since the dissolution, the children had resided with Intervenors as much as 80% of the time; they had their own rooms and toys at Intervenors' home; after the children were returned in December, 1994, Intervenors had shown "remarkable initiative, drive and determination in providing a stable home environment and promptly obtaining the educational and developmental resources which Dustin and Jackie need"; that there had been no change in Dustin's emotional re-

**2.** All statutory references are to RSMo 1994, unless otherwise indicated.

sponse to his father since the hearing in July, 1994; that Dustin had indicated a desire to stay with Intervenors which was real and spontaneous; and that Intervenors were the only parties before the court who had a proven track record of acting in the childrens' best interests. The court acknowledged that Intervenors had assisted Mother in removing the children from the State, but focused on the "crucial issue facing the Court— the best interests of the children." It also noted Intervenors' ages (Mr. Ham was then 69 and Mrs. Ham 64), but concluded that "[g]iven the commendable record as capable custodians for the children, the Court concludes that it would not be in the children's best interests to reject the grandparents as custodians based solely on conjecture and speculation about future age and health problems which do not presently exist."

The trial court obviously considered the physical and psychological conditions of the children in reaching its decision. These are special and extraordinary circumstances which, together with the demonstrated care and attention given to them by Intervenors, should be considered in arriving at custody decisions. In fact, the trial court said that a bond had developed between the children and Intervenors, whose "demonstrated ability to address the previously neglected special needs of the children, including [Jacqueline's] autism, neutralizes any presumption or preference in favor of the biological parents and calls for long-term custody with the grandparents."

Some of the evidence obviously considered by the trial court in reaching its custody decision was that which was presented in the July, 1994 hearing. In fact, the court noted that it was not re-hearing those matters when it considered the instant motions. The evidence presented at the earlier hearing, however, is not contained in the record filed with this court. The court referred to some of that evidence in its Judgment by saying that after the July, 1994 hearing, the court had concluded that Dustin's emotional and psychological health would be harmed by unrestricted and unsupervised visitation with Father because of his anger, and his lack of

personal responsibility and parenting skills, which constituted a threat to Dustin's wellbeing; the evidence indicated that there had been no change in Dustin's emotional response to Father since the earlier hearing; and after the earlier hearing the court had given Father a chance to demonstrate a "real commitment to process [sic] of growth and healing by mandating a course of psychological counseling aimed at the personality deficits that were so apparent in the record of the 1994 proceedings," but that he did nothing about it until compelled to do so by the suspension of his visitation privileges, and that it was "then actuated by the desire to improve his legal posture in these proceedings."

The trial court acknowledged Father's frustration at having his access to the children thwarted with the result that he was prevented from providing the care and attention which the court found had been provided by Intervenors. It found, however, that it had "lingering and real concerns about the father's fitness as a custodian," saying that "[a]lthough the Court is sympathetic to the father's frustration, no convincing evidence at the [trial] indicated that anything has changed in a year to allay the Court's concerns regarding the father's parental abilities and relationship with Dustin."

We recognize the unfortunate and unfair fact that Father was prevented from having essential contact with the children which could have provided him an opportunity to demonstrate his willingness and ability to attend to their special needs. The trial court, however, had a first-hand opportunity to observe the parties and judge their sincerity, commitment to the children, and ability to meet the childrens' needs. The trial court obviously considered evidence which was before it in July, 1994, a record which we do not have. Considering our thorough review of the record before us, the findings made by the trial court, and the necessity that we give deference to the trial court's conclusions, we are unable to conclude that the Judgment was not supported by substantial evidence, was against the weight of the evidence, or erroneously applied or declared the law. Accordingly, we must affirm the Judgment as it

relates to custody of the children. In doing so, however, we note that Father was awarded visitation privileges with the children and has, therefore, an opportunity to demonstrate his commitment and ability to provide for their needs.

Father's points one, two and three are denied.

■ Father's fourth point relates to the failure of the trial court to award him his attorney's fees and expenses incurred in connection with his amended motion to modify. In his amended motion, he pleaded that Mother had unreasonably denied and interfered with his visitation rights, and requested that she be ordered to pay his attorney's fees and costs incurred in connection with that proceeding. He characterizes the amended motion to modify as a proceeding to enforce his visitation and custody rights under § 452.400.4, which provides that "[t]he attorney's fees and costs of a proceeding to enforce visitation rights shall be assessed against the parent who unreasonably denies or interferes with visitation." Although the trial court noted, in its judgment, that Mother had taken the children to Utah and had prevented Father from exercising his visitation privileges, it denied his motion in its entirety. In doing so, the trial court offered no explanation for denying his request for attorney's fees and costs.

■ In our review of the record, we find that an exhibit was received in evidence which apparently itemized expenses Father incurred in attempting to find the children in Utah, and in responding to the suit Mother filed in that state seeking custody. Father fails to direct us to any portion of the record containing proof of attorney's fees and expenses incurred in connection with this action, and our own review of the record reveals no such proof. While it is true that a judge is an expert on attorney's fees, an award of attorney's fees and costs must be supported by competent and substantial evidence. *Reding v. Reding,* 836 S.W.2d 37, 41 (Mo.App. S.D.1992).

■ Additionally, we note that this was a motion to modify in which Father sought to modify the existing custody award by obtaining custody himself. It may have been prompted by interference with his visitation rights, but it sought a change of custody rather than enforcement of his rights. Under those circumstances, an award of attorney's fees and expenses is not authorized by § 452.400.4. *Jones v. Jones,* 902 S.W.2d 363, 366 (Mo.App. E.D.1995). *See also Wilson v. Sullivan,* 922 S.W.2d 835, 840 (Mo.App. E.D. 1996) where, in a concurring opinion, Judge Crahan recognized such a distinction and said that § 452.400.4 was not applicable where the relief sought was a modification of custody, "relief which completely supersedes father's visitation rights under the prior decree," rather than to enforce the existing visitation rights.

Under the circumstances here, we are unable to conclude that the trial court erred in denying Father's request, pursuant to § 452.400.4, for an award of attorney's fees and expenses incurred in connection with this action. The fourth point is denied.

In his final point, Father contends that the trial court erred in denying his claim against Mother, in his amended motion to modify, for the expenses incurred by him in locating his children when Mother moved them to Utah, and for his attorneys' fees incurred in connection with the custody action filed by her in that State. In denying the relief sought in his amended motion, the trial court also denied this claim without explanation.

■ Father argues that he was entitled to these expenses pursuant to § 452.400.3 which provides, in part:

3. The court shall mandate compliance with its order by both the custodial parent and the child. In the event of noncompliance, the noncustodial parent may file a motion for contempt. Upon a finding by the court that its order for visitation has not been complied with, without good cause, the court shall define the noncustodial parent's visitation in detail and shall exercise its discretion in providing a remedy, which shall include, but not be limited to, a compensatory period of visitation or temporary custody ..., together with a judgment in an amount not less than the reasonable expenses incurred by the non-

custodial parent as a result of denial of visitation

This statute relates to relief pursuant to a motion for contempt. Here, Father appeals from a judgment denying his motion to modify. He cites no authority in support of his obvious contention that § 452.400.3 applies in such a proceeding. It is the obligation of an appellant to cite pertinent precedent in support of a point, or, if such precedent is unavailable, to so state. *Emery v. Emery*, 833 S.W.2d 453, 454–55 (Mo.App. S.D.1992). Accordingly, this point is denied.

The judgment is affirmed.

## ON AMENDED MOTION FOR REHEARING

Counsel for Father filed a motion for rehearing pursuant to Rule 84.17, which he later amended. In his amended motion, he alleges, among other things, that this Court "ignored, disregarded and failed to honestly and unbiasedly consider the best interest [sic] of the minor children herein"; "[p]unished [Father] for strict compliance with the laws of the State of Missouri and the orders of the trial court"; condoned the "willful, unlawful, contemptuous actions" of Mother; and placed the children with Intervenors who "knowingly, willfully, actively and continuously pursued a course to take the children away from their natural parents..." In his suggestions in support of the amended motion, he argues that this Court "indifferently and with total disregard, ignored the parental rights of [Father], and ignored the best interest of children." Finally, he says that "[b]y upholding the order of the trial court, this Court has ignored, failed and refused to consider the evidence presented in this cause. Despite the 461 pages of testimony adduced in this cause, and despite efforts of an investigator hired by the Intervenors to investigate [Father], the record is totally lacking in any negative testimony regarding [Father]." We feel compelled to respond these allegations.

■ As indicated in our opinion, the trial court acknowledged Father's frustration caused by the actions of Mother and Intervenors. This Court noted the unfairness of Father being thwarted in his attempts to be with his children. Nothing we said in our opinion, and nothing we say here, detracts from the unfairness of this situation from Father's perspective. As we pointed out in our opinion, however, the law requires that the primary consideration be the best interests of the children. Contrary to Father's apparent premise, the fact that he was treated unfairly by the wrongful conduct of Mother and Intervenors did not automatically equate to a mandate entitling him to an award of custody. An award of custody may not be used as a reward or punishment of either parent. *D.K.L. v. L.C.L.*, 764 S.W.2d 664, 666 (Mo.App.E.D.1988). "In all cases, the court must determine custody in accordance with the 'ultimate and sole test' of the best interests of the child... Indeed, the 'child's interests and welfare predominate over all other considerations in a custody dispute.'" *M.D.R. v. P.K.R.*, 716 S.W.2d 866, 868 (Mo.App.W.D.1986).

Father also argues that the record is devoid of any basis upon which the trial court could have denied him custody. As we noted in our opinion, the trial court on several occasions referred to evidence it heard in July, 1994 concerning whether an award of custody to Father would be in the best interests of the children. It was quite apparent that the trial court was concerned in that regard by evidence presented at the hearing, and obviously relied upon it, at least in part, in entering the judgment which is the subject of this appeal.

■ We noted three times in our opinion that the evidence of the July, 1994 hearing was not filed here for our review. It is the appellant's duty to submit a proper record containing all of the evidence necessary for a determination of the questions presented to this Court for decision. *State ex rel. DFS v. Brown*, 897 S.W.2d 154, 158 (Mo.App.S.D. 1995). Because we did not have the record of the July, 1994 hearing before us, we were unable to presume that it would support Father's position on this appeal. In fact, evidentiary omissions will be taken as favorable to the trial court's decision and unfavorable to the appellant. *In Re Marriage of Lawry*, 883 S.W.2d 84, 89 (Mo.App.S.D.1994). If, as argued by Father, the record truly was

devoid of any evidentiary basis to support a denial of custody to him, it was his obligation to furnish a record supporting that assertion, especially since the trial court relied on evidence at the earlier hearing in entering its judgment.

Father's amended motion for rehearing is denied.

