**v.**

**C.W., and H.W., his wife,**
**Defendants–Respondents.**

**No. 16230.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 2, 1990.

Ralph W. Muxlow II, Richland, for plaintiff-appellant.

Randall R. Sutter, Lebanon, for defendants-respondents.

MAUS, Judge.

By her petition in habeas corpus, the appellant mother, C.M.W., seeks custody of her son, born December 10, 1985, against the mother's parents. The trial court denied the petition. The mother states one point on appeal.

The following is a resumé of the facts. The mother has never been married. She was 17 years old at the time of the child's birth. She was living with her parents. The vaguely identified putative father has in no way acknowledged paternity. The mother did not complete high school. She smoked marijuana until fifteen weeks into her pregnancy. She has lived with three men since the child was born.

After the child was born, the mother lived with her parents for approximately one month. She then moved in with her sister in order to qualify for welfare. She lived there a month or two. The mother next moved to a mobile home court and stayed with the B. family for about two months. The mother then got a job washing dishes. She moved into an apartment and stayed about a month until she lost her job. She then moved back to her parents' home. The child was five months old when the mother and child returned to the parents' home.

The mother stayed in her parents' home approximately two weeks before she joined a carnival and left. She was gone from July of 1986 through November of 1986 with the carnival. She then returned to her parents' home. She was accompanied by her boyfriend. They lived in the parents' home from November of 1986 until May of 1987.

In May of 1987, the mother, her boyfriend and the child moved to a house. This arrangement continued until July of 1987 when the mother and her boyfriend left with a carnival. The child was left with the mother's parents. By November 1987, the mother had moved to St. Paul, Minnesota. She had told her parents she was moving to St. Paul and that she wanted to take the child. The parents refused to permit her to do so.

After the mother moved to St. Paul, she was in Missouri for three or four days during the Christmas season of 1987. She was again in Missouri in May of 1988 for a hearing on custody. She called the child approximately once a month during the time she was in St. Paul. Since his birth, the mother had supplied $30 and a small amount of clothing for the child. In the eighteen months prior to trial, the mother had spent approximately ten days with the child.

At the time of the trial, the mother was employed as a dispatcher at a towing firm. She worked at night. She made approximately $600 per month. She lived with a boyfriend. The only information concerning the boyfriend was that he was part owner of a carnival, owned a tow truck and found the job for the mother. She testified the boyfriend would continue to live in the home if she were granted custody of the child. She intends to stay in St. Paul.

The evidence established the grandparents provided the child with love and affection and a good home. It also established their desire and ability to continue to do so.

At the conclusion of the hearing, the court made an extensive docket entry which was later incorporated into the judgment. The following finding in the judgment precedes the adjudicatory clause.

"The court finds neither the natural mother (Plaintiff) nor the grandparents (Defendants) have a custody order and, therefore, the court must consider evidence as to what is in the best interest of the child."

The mother's point is that the trial court erred in declaring "the appropriate legal standard in this cause to be what is in the best interests of the child" and "[t]he correct legal standard is that the natural parent should have custody of her child, as against custody claims of third parties, unless special and extraordinary reasons exist which leave no doubt that the best interests of the child dictate custody should be placed with third parties, regardless of the fitness of the natural parent". She adds that if the correct legal standard had been applied by the trial court, custody would have been placed with her. She cites and relies primarily upon *In Interest of Feemster*, 751 S.W.2d 772 (Mo.App.1988).

The mother misconceives the applicable law. The best interests or welfare of a child is always an issue. *State ex rel. S.O. v. S.O.*, 725 S.W.2d 601 (Mo.App.1986); *In Interest of K.K.M.*, 647 S.W.2d 886 (Mo. App.1983). However, when the determination of custody is a choice between a parent and a third person, the best interests of the child is to be considered in the context of the following well-established principle.

"There is a rebuttable presumption that a natural parent is a fit and qualified custodian of her minor child.... The natural parent is not to be denied custody unless there is a showing that the parent is unfit or incompetent or that the welfare of the child, due to special or extraordinary circumstances, demands that custody be granted to one other than the natural parent.... The burden of proof was on respondents to rebut the presumption....

*The welfare of the child is the paramount consideration....* 'All things being equal' custody should be awarded the natural parent...." *In Interest of Feemster*, supra at 773 (citations omitted) (emphasis added).

The mother has seized upon the quoted finding to establish the trial court erred by deciding the case as if the choice of custody was between two parents rather than a parent and third parties. However, the quoted finding of the trial court in the judgment is no indication the trial court was not aware of and did not apply the principle stated in *Feemster*. In an action in habeas corpus, if a child is being detained by virtue of an order of a court, the petition and answer in that proceeding should incorporate or at least refer to such an order. If there is such an order, an additional issue is injected into the case. In this proceeding, it was altogether appropriate for the trial court to find that there was no issue raised by a court order concerning the custody of the child before considering the best interests of the child in the context of the above stated principle.

The mother made no request for findings. Rule 73.01(a)(2). She is not entitled to complain that the trial court did not make an express finding that the welfare of the child, due to special or extraordinary circumstances, demanded that custody be granted to the grandparents. *Estate of Graves*, 684 S.W.2d 925 (Mo.App.1985). "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." 73.01(a)(2). Also see *Lyman v. Walls*, 660 S.W.2d 759 (Mo.App. 1983). Moreover, "[t]he judgment is to be affirmed under any reasonable theory supported by the evidence with the appellate court obliged to accept as true the evidence and permissible inferences which may be drawn, favorable to the prevailing party, and disregard the contradictory testimony." *Lycan v. Rockefeller*, 736 S.W.2d 74, 77 (Mo.App.1987).

There is evidence bearing upon the issue of the mother's fitness as a parent. However, it is not necessary to further recite or evaluate that evidence.

> "This court holds that the presumption which favors vesting of custody in the natural parent must fall whenever the best interests of the child, for some special or extraordinary reason or circumstance, mandate that custody be vested in third persons, regardless of whether the evidence establishes the unfitness or incompetence of the natural parent." *In Interest of K.K.M.*, supra at 890.

Courts of this state have long recognized that the irresponsible conduct of a biological parent that results in a child being in a bonding familial custody relationship with third parties, constitutes a special or extraordinary reason or circumstance within the meaning of the foregoing rule. *In Interest of Feemster*, supra; *In re B.W.D.*, 725 S.W.2d 138 (Mo.App.1987); cf. *H.D. v. E.D.*, 629 S.W.2d 655 (Mo.App.1982), involving termination. The development of the cases is outlined in a learned opinion in *In Interest of K.K.M.*, supra.

The force of such circumstances has been succinctly expressed in terms applicable to the facts of this case.

> "Except for the first three months of his life, Joshua has received only a minimal amount of maternal care or interest from Karen. From his infancy to the commencement of this habeas corpus proceeding Joshua has been for all practical purposes the child of Idris and Mary Gish. The trial court found, in essence, that the welfare of Joshua, due to special or extraordinary circumstances, demanded that Karen's petition for his custody be denied." *In Interest of Feemster*, supra at 776.

Such circumstances are even more compelling when the home tendered by the biological parent is of the quality of that of the mother in this case. The judgment of the trial court is affirmed.

FLANIGAN, P.J., and HOGAN, C.J., concur.