Jennifer M. FLATHERS, Respondent,

v.

James W. FLATHERS, Defendant,

Dennis Eugene Flathers and Gwendolyn
Kay Flathers, Appellants.

No. WD 53063.

Missouri Court of Appeals,
Western District.

July 22, 1997.

R.W. Shackelford, Lexington, for Respondent.

Karl H. Timmerman, Grandview, for Appellants.

James E. Hoke, Harrisonville, Guardian Ad Litem.

Before ULRICH, C.J., P.J., and LAURA DENVIR STITH and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Appellants, Dennis and Gwendolyn Flathers, appeal the judgment of the trial court awarding, *inter alia*, in a dissolution of marriage action involving their son, James, the physical custody of their two grandchildren to the mother, Jennifer M. Flathers (respondent). Appellants claim that in awarding custody of their two grandchildren to respondent, the trial court erred, in that: (1) in doing so, it erroneously declared and applied the law in relying on the presumption favoring the award of custody of minor children to parents; and, (2) the award, as being in the best interests of the children, was against the weight of the evidence.

We affirm.

## Facts

Respondent's and James W. Flathers' first child, C.C.F., was born out of wedlock on July 1, 1993. At the time, respondent was 17 years old and living with her parents in

Higginsville, Missouri. Soon thereafter, respondent, James and C.C.F. moved in with James' parents (appellants) in Belton. Respondent and James were married on August 30, 1993. The living arrangement proved to be troublesome, and in January of 1994, appellants asked respondent and James to move out of their home. The couple and C.C.F. lived in a variety of locations in the subsequent months. Eventually, taking care of C.C.F. proved to be too much for respondent and James, and appellants took physical custody of their grandson at the parents' request. In March of 1994, letters of guardianship of C.C.F. were issued to appellants by the Circuit Court of Cass County in Case No. CV294–43P with the consent of respondent and James because they were unable to provide for his necessities.

Respondent gave birth to the couple's second child, J.D.F., on December 16, 1994. Less than a week later, Division of Family Services (DFS) took J.D.F. from the parents and placed her in the care and custody of the appellants. Appellants were issued letters of guardianship of J.D.F. in February of 1995 in the Circuit Court of Cass County in Case No. CV295–15P with the parents' consent due to their inability to provide for her necessities. By the summer of 1995, respondent and James had separated; James had a new girlfriend; and, respondent had moved back in with her parents.

Respondent filed her petition for dissolution of marriage in the Circuit Court of Lafayette County on August 25, 1995. In her petition, she did not request custody of the children. On November 13, 1995, she filed a request to terminate guardianship of the children. Two weeks later, appellants filed a motion to intervene in the dissolution action, which respondent opposed and requested that she be awarded custody of the children. The motion to intervene was sustained January 9, 1996. The next day, the parties agreed to transfer the dissolution action to Cass County, so it could be consolidated with the motions to terminate guardianships.

The trial on respondent's petition to dissolve her marriage and on her motions to terminate the guardianships began April 25, 1996, and concluded the next day. After hearing evidence, the trial court terminated the guardianships and awarded in the dissolution action, *inter alia,* custody of the two minor children to respondent, finding that continued custody with appellants "will not serve the children's best interest and will tend to alienate the children from their natural mother and confuse the minor children in their relationship with their natural parents and extended family." The court noted that it found respondent to be credible and sincere, and that she was employed and lived in a stable home environment with her parents and the benefit of their support and assistance. There was also evidence that she had completed a course to become a certified nurse's aide and had attended G.E.D. classes. Further, the trial court found that joint custody with James was inappropriate in that he had not sought custody, and that respondent was a fit and proper person to care for the children. This appeal follows.

## Standard of Review

As to an award of child custody, we will affirm the decision of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Gilman v. Gilman,* 851 S.W.2d 15 (Mo.App.1993). A judgment will be set aside as being "against the weight of the evidence" when the appellate court has a "firm belief that the judgment is wrong. Weight of the evidence refers to weight in probative value, not quantity or the amount of evidence. The weight of evidence is not determined by mathematics, but on its effect in inducing belief." *Silver Dollar City, Inc. v. Kitsmiller Const. Co., Inc.,* 931 S.W.2d 909, 918 n. 18 (Mo.App.1996). The trial court has broad discretion in child custody matters, and we will affirm its decision unless we are firmly convinced that the welfare and best interests of the children requires otherwise. *Replogle v. Replogle,* 903 S.W.2d 551, 554 (Mo.App.1995); *P.L.W. v. T.R.W.,* 890 S.W.2d 688, 690 (Mo.App.1994). Greater deference is given to the trial court in child custody cases than in other types

of cases. *Replogle*, 903 S.W.2d at 554; *Johnson v. Johnson*, 839 S.W.2d 714, 717 (Mo.App.1992).

## I.

Appellants claim in their sole point on appeal that the trial court erred in awarding custody of the minor children to respondent. Their claim is presented in two sub-points. In sub-point A, they claim the trial court, in awarding custody to respondent, erroneously declared and applied the law by invoking the presumption which favors custody to parents over third parties. In sub-point B, appellants claim that awarding custody of the minor children to respondent as being in their best interests was against the weight of the evidence. We will address each sub-point separately.

### A. Parental Presumption

■ In claiming that the trial court erroneously applied the presumption favoring custody to parents over third parties, commonly referred to as the "parental presumption," appellants contend that the presumption does not apply as a matter of law here because they already had been awarded actual physical custody of the minor children pursuant to letters of guardianship of minors. Although we agree that lawful, actual physical custody for a significant period of time in third parties may, under certain circumstances, be sufficient to rebut the parental presumption, we disagree that it does not apply as a matter of law where letters of guardianship of a minor have been issued, as was the case here.

■ Section 452.375.5 [1] controls the award of custody to third parties. This subsection provides in pertinent part that:

> *Prior to* awarding the appropriate custody arrangement in the best interest of the child, the court shall consider each of the following as follows:

(1) Joint custody to both parents, which shall not be denied solely for the reason that one parent opposes a joint custody award;

(2) Sole custody to either parent; or

(3) Third party custody or visitation:

(a) When the court finds that each parent is unfit, unsuitable, or unable to be a custodian, or the welfare of the child requires, and it is in the best interests of the child, then custody, temporary custody or visitation may be awarded to [a third party].

§ 452.375.5 (emphasis added). Pursuant to this subsection, a third party must show that "each parent is unfit, unsuitable, or unable to be a custodian, *or* the welfare of the child requires" it, rendering it in the best interests of the child to award his or her custody to the third party. § 452.375.5 (emphasis added). We read the unambiguous language of this statute as creating a rebuttable presumption that parents are fit, suitable, and able custodians of their children and that their welfare is best served by awarding their custody to their parents. Stated another way, natural parents are not to be denied custody of their minor children, unless the third party seeking custody first carries its burden of showing that each parent is unfit, unsuitable, or unable to have custody or that the welfare of the children requires it. Separate and apart from this statutory authority for the presumption, the parental presumption has long been recognized in the case law. *In Interest of C.L.M.*, 625 S.W.2d 613, 617 (Mo. banc 1981); *In Interest of Hill*, 937 S.W.2d 384, 386 (Mo.App.1997); *C.M.W. v. C.W.*, 786 S.W.2d 623, 625 (Mo.App.1990); *In Interest of Feemster*, 751 S.W.2d 772, 773 (Mo.App.1988); *In Interest of K.K.M.*, 647 S.W.2d 886, 889 (Mo.App.1983). [2] Thus, as appellants admit, there is a parental presumption. The question is whether it has any application in the instant dissolution action.

1. All statutory references are to RSMo 1994, unless otherwise indicated.

2. In *Frederick v. Frederick*, 617 S.W.2d 629, 635 (Mo.App.1981), this court held that although there was a preference favoring child custody in natural parents, there was not a presumption as

that term is used in the law. On this issue, *Frederick* was subsequently overruled, *sub silentio*, by the Missouri Supreme Court in *In Interest of C.L.M.*, 625 S.W.2d 613, 617 (Mo.1981), which was followed by this court in *In Interest of Hill*, 937 S.W.2d 384, 386 (Mo.App.1997).

■ As to the parental presumption, appellants contend that it does not apply here, because in the guardianship proceedings, wherein appellants were granted letters as to C.C.F. (Case No. CV294–43P) and as to J.D.F. (Case No. CV295–15P), they had already been awarded "custody" of the children, the trial court having found in those proceedings, pursuant to the stipulation of the parties, respondent and the children's father to be "unwilling, unfit, or unable" to serve as custodians for the children. Thus, appellants argue that the parental presumption did not exist in the dissolution action and the determination of custody therein should have been treated as a motion to modify the "third-party custody" awarded by the trial court in the guardianship proceedings. We disagree.

Without directly deciding the issue, we recognize that there does appear to be authority for the proposition that in a modification of custody proceeding pursuant to § 452.410, the "parental presumption" does not apply or "disappears" where a parent seeks to modify a prior third-party custody order. In *In re Marriage of Carter,* 794 S.W.2d 321 (Mo.App.1990), the maternal grandmother, who had intervened in the parents' dissolution of marriage, was awarded custody. After the mother died, the father filed a motion to modify and was awarded custody. The Southern District reversed, holding that the trial court had erred in awarding custody to the father based on the parental presumption because the presumption "had disappeared." *Id.* at 327.

Although not expressly articulated by the *Carter* court as reasons for its holding, there appear to be two apparent reasons for it. First, in order for the grandmother to have received third-party custody in the original custody proceeding, the parental presumption would have had to have been rebutted. The parental presumption would then have been supplanted by the presumption that the party awarded custody in the original decree is a suitable custodian. *Guier v. Guier,* 918 S.W.2d 940, 946 (Mo.App.1996). Second, the court in *Carter,* in discussing *Shortt v. Lasswell,* 765 S.W.2d 387, 389 (Mo.App.1989), focused on whether the reversal of the disqual-

ifying condition of the parent which triggered third-party custody in the original proceeding, was sufficient to change custody under § 452.410. *Carter,* 794 S.W.2d at 324. In this respect, unlike in an initial award of custody in a dissolution action, in a modification proceeding, there cannot be a change of custody unless there first is a showing that change has occurred in the circumstances of the child or the custodian. § 452.410; *Guier,* 918 S.W.2d at 946; *Riley v. Riley,* 904 S.W.2d 272, 276 (Mo.App.1995). In a proceeding to modify third-party custody, the parental presumption favoring the non-custodial parent would not constitute a change in circumstances of either the child or custodian supporting a change of custody from the third-party custodian. Thus, it was reasonable for the *Carter* court to have concluded that the parental presumption did not exist as change of circumstances warranting a change in custody. For these reasons, under the fact situation in *Carter,* the parental presumption of § 452.375.5 would not apply, or as the Southern District held, it "had disappeared." Recognizing that there is authority for the proposition that the parental presumption does not apply in a modification of custody proceeding pursuant to § 452.410, still does not answer the question presented here, and that is whether the parental presumption exists in a dissolution proceeding where a third party has previously been awarded letters of guardianship as to the minor children in question.

Section 452.410, by its own terms governs the modification of a "prior custody decree." Thus, in order to find as appellants contend that the custody determination in the instant proceeding should have been treated as a modification, we would have to find that the letters of minor guardianship issued to appellants were the equivalent to "prior custody decrees" in the context of § 452.410. We reject this contention.

Section 475.030 governs the issuance of letters of guardianship as to a minor. It provides in pertinent part that "letters of guardianship of the person of a minor may be granted ... [w]here the parents or the sole surviving parent of a minor are unwilling, unable or adjudged unfit to assume the

duties of guardianship." § 475.030.4(2). Thus, unlike custody awarded in a dissolution action, the granting of letters of a minor is done as a stop-gap measure to provide for the care and custody of a minor for the period of time when the natural guardian-parent is unable, unwilling, or unfit to perform this parental function. §§ 475.025, 475.030, 475.045; *Reece v. Reece*, 890 S.W.2d 706, 710 (Mo.App.1995). Logically, when the parent is once again able to perform his or her duties as the natural guardian, the need for the guardianship ceases to exist and is subject to being terminated.[3] Obviously, the bases for awarding and terminating the "temporary" care and custody of minors under the guardianship statutes are not the same as the bases for awarding "permanent" care and custody of minors pursuant to § 452.375 and "modifying" such awards under § 452.410. Thus, the logical reasons for the parental presumption not applying in a § 452.410 modification proceeding, where a third party has been awarded custody in a "prior custody decree," do not operate to render the parental presumption inapplicable in a § 452.375 custody proceeding, where a third party has been issued letters of guardianship of a minor.

In holding that letters of guardianship of minors are not prior custody decrees for purposes of § 452.410, we recognize that § 452.445(2) defines the appointment of a

guardian of the person as a "custody proceeding," and § 452.445(3) defines a judicial order entered in such proceeding as a "custody decree." However, by its terms, § 452.445 only expressly applies to §§ 452.440 to 452.550, the Uniform Child Custody Jurisdiction Act. For the reasons stated, *supra*, we decline to apply § 452.445 definitions of custody proceeding and decree to § 452.410 proceedings.

In awarding custody of the children to respondent, the trial court stated in pertinent part that:

> I think it's very clearly the goal of the statutes, both in the probate code and in the dissolution of marriage sections of the statutes, that the legislature anticipates and directs that children are to be raised by their own parents unless the court finds very good reasons not to be doing that.

> .    .    .    .    .

> ... Now, in order to get to third party custody or visitation, the court has to find that each parent is unfit, unsuitable, or unable to be custodian, or the welfare of the interest requires, and it is in the best interests of the child, then custody, temporary custody, or visitation may be awarded to any other person or persons deemed by the court to be suitable and able to provide an adequate and stable environment for the child.

> I would note that at each hearing both of the natural parents appeared in person and consented, both in writing and orally, to the establishment of those guardianships in favor of the paternal grandparents, Dennis and Gwendolyn Flathers. No one else appeared. Therefore, on March 15, 1994, as to [C.C.F.], it was adjudicated that both parents were unwilling, unfit, or unable to provide for the chil—for [C.C.F]. And on 2/15/95 that same adjudication was made as to [J.D.F.].

> Now, that determination and adjudication continues until it's changed, but I want everyone to realize that that is not a daily determination that either one of those people is unfit, unwilling, or unable to provide for the children. It simply means that on the date the order was entered that was found, and order remains in effect until it's changed. That doesn't mean that on 3/16/94 either one of them was unfit, unwilling, or unable to take care of [C.C.F.]. It simply means that there was an order that was entered on the 15th of March that hadn't been changed. And there is a tremendous difference in those two concepts.

**3.** As to the guardianships, the trial court, in terminating them just prior to awarding custody to respondent in the dissolution proceeding, stated on the record as follows:

> First of all, in cases numbered CV294–43P, in the matter of [C.C.F.], a minor, and CV295–15P, in the matter of [J.D.F.], a minor, the court finds that the application of natural mother of those two minors, Jennifer M. Flathers, to terminate those guardianships should be and is hereby sustained.

> In so doing, the Court is going to point out the guardianships are not necessary. At the time they were established, the natural parents were still married and there was no other vehicle available to the Court to deal with the care, custody, and control of those two children.

> Now, under 452.375, the Court is in a position in the dissolution of marriage action which is pending, to make orders with respect to the care, custody and control of those two minor children. And the guardianships are not necessary. They are terminated and the letters of guardianship are revoked.

These statements of the trial court reflect that in awarding custody of the children it correctly recognized the parental presumption applied in the case at bar. Because we agree with the trial court that the parental presumption had not disappeared, we find that appellants' claim that the trial court erroneously declared and applied the law in applying the parental presumption in determining custody to be without merit.

Although we hold that the parental presumption applies under the circumstances of this case, that is not to say that the actual physical custody held by appellants pursuant to the letters of guardianship could not act to "rebut" the presumption. The issue of rebutting the presumption and the sufficiency of the evidence for that purpose are discussed in Point II, *infra*.

Point denied.

### B. Rebutting Presumption and Best Interests of Children

In this sub-point, appellants claim that the trial court erred in awarding custody to respondent because such an award was against the weight of the evidence in that the weight of the evidence established that the best interests of the children would be for them to reside with appellants. Appellants only appear to attack the sufficiency of the evidence for the trial court's finding that the best interests of the children warranted custody being awarded to respondent and do not specifically attack the sufficiency of the evidence to rebut the parental presumption. However, in order to be entitled to the relief they request, reversal and third-party custody of C.C.F. and J.D.F., appellants cannot legally or logically attack the former without first successfully attacking the latter. This is so, because, as we discussed in Point I, *supra*, before awarding custody to a third party, as appellants request here, the trial court is first required to find that the parental presumption has been rebutted. Although not specifically raised, giving appellants' claim a broad reading and given the inherent interest of the state in protecting the best interests of children, we find the issue is sufficiently raised in appellants' brief to be addressed on appeal. *See Myers v.*

*Myers*, 480 S.W.2d 74, 76 (Mo.App.1972) (holding that where custody of children is involved, the appeal should be decided on the merits even though appellant failed to comply with Rule 84.04(d), V.A.M.R., concerning Points Relied On).

As to rebutting the parental presumption, we glean from § 452.375.5 that rebuttal occurs "[w]hen the court finds that each parent is unfit, unsuitable, or unable to be a custodian, or the welfare of the child requires, and it is in the best interest of the child." § 452.375.5(3)(a). The statute creates two bases for rebutting the presumption, the "fitness" basis and the "welfare" basis. As to rebutting the presumption, appellate decisions, although not specifically citing the statute, are consistent with its directive that all things being equal, a natural parent is to be awarded custody of his or her children over a third party unless there is a showing that the parent is unfit or incompetent or that the welfare of the children, due to special or extraordinary circumstances, renders it in their best interests that their custody be granted to a third person. *Hill*, 937 S.W.2d at 386; *C.M.W.*, 786 S.W.2d at 625; *Feemster*, 751 S.W.2d at 773; *K.K.M*, 647 S.W.2d at 889. We will first discuss the "fitness" then the "welfare" basis for rebutting the presumption.

On the issue of fitness, we initially note that appellants contended and we rejected in Point I, *supra*, that the trial court was bound by its determination in the guardianship proceedings that respondent was "unfit, unsuitable, or unable" to serve as a custodian for the minor children. Thus, we must look to the trial court's findings as to respondent's fitness as found in the dissolution action. In this respect, the trial court found in its decree that respondent was a fit and proper person to have custody of the children, stating that:

[Respondent], Jennifer M. Flathers, is gainfully employed and has lived in a stable home environment for the past eight (8) months and is currently residing with her parents and her siblings in a proper residence located in Higginsville, Missouri and that [she] has the support of her family with whom she resides to assist her with

the care of the minor children. The Court further finds [respondent] to be a credible witness and has expressed a sincere desire to care for the minor children born to [respondent] and [James W. Flathers], and further that [respondent] is a fit and proper person to be awarded the care and custody of the minor children born of the marriage.

Contrary to this finding of fitness, appellants argue that respondent had been guilty of welfare fraud for receiving AFDC and food stamp benefits while appellants had actual physical custody of the children; had neglected the children by showing no interest in and providing no support for them while they were in the custody of the appellants; had sold stolen meat; demanded payment for watching her own children; failed to have any frequent and meaningful contact with the children; and, basically lacked appropriate parenting skills, including allowing DFS-substantiated abuse to occur while C.C.F. was in her custody for visitation. In finding as it did on the issue of fitness, it is apparent the trial court believed these were past, not present conditions. "[A] parent's right to custody of his or her minor child is determined by existing conditions—past conditions are material only to the extent that they clarify and cast light on present conditions." *Hill*, 937 S.W.2d at 388, *citing Feemster*, 751 S.W.2d at 773. As to present conditions, the trial court found that respondent was a fit and proper person to have custody of the minor children, citing in its findings present conditions in support thereof, for which conditions there was evidentiary support. Thus, the weight of the evidence here does not demonstrate that the trial court was wrong in failing to find that respondent was "unfit" to have custody of her children, which leads us to whether the weight of the evidence would rebut the presumption on the "welfare" basis.

■ As stated, *supra*, the parental presumption can be rebutted on the "welfare" basis by demonstrating that the welfare of the child, due to special or extraordinary circumstances, renders it in the children's best interests that their custody be awarded to a third party. With respect to what constitutes special or extraordinary circum-

stances sufficient to rebut the parental presumption, our appellate courts, including this court, have held that a significant bonding familial custody relationship with third parties can constitute a special or extraordinary reason or circumstance rendering it in a child's best interests to award third-party custody. *Hill*, 937 S.W.2d at 388; *In re B.W.D.*, 725 S.W.2d 138, 139 (Mo.App.1987); *C.M.W.*, 786 S.W.2d at 625; *Feemster*, 751 S.W.2d at 773; *K.K.M.*, 647 S.W.2d at 889. In so holding, the courts do not hold that every third-party custodial relationship will automatically rebut the parental presumption rendering it in the best interests of the child that third-party custody be awarded. Each case must turn on its own facts.

■ In holding that a significant bonding familial custody relationship with third parties is sufficient to rebut the parental presumption, the courts have recognized that the removal of children from their present home can, in some circumstances, be so traumatizing as to cause irreversible harm to the children's mental and physical development. *Hill*, 937 S.W.2d at 387. Thus, it is logical that changes in custody, including third-party custody, are not favored by the courts. This logic has led to the requirement in § 452.410 modifications that there can be no change of custody unless there has been a substantial, significant and continuing change in circumstances warranting such a change. *See Humphrey v. Humphrey*, 888 S.W.2d 342, 345 (Mo.App.1994) (holding that "[t]here is much value in allowing children to remain with the parent who has custody as opposed to uprooting them and transporting them to a new home"); *see also McClain v. Chaffee*, 894 S.W.2d 719, 723 (Mo.App.1995); *Indermuehle v. Babbitt*, 771 S.W.2d 873 (Mo.App. 1989); *Morrison v. Morrison*, 676 S.W.2d 279 (Mo.App.1984).

As to special or extraordinary circumstances in the instant case, the evidence is unrefuted that practically from the time of birth, both children had resided with appellants who cared for them and provided for their total support. The trial court did not find nor does the evidence demonstrate that the appellants originally conspired or con-

nived to gain temporary custody of the children to enable them to "set-up" the special or extraordinary circumstance argument to ultimately gain permanent custody from the parents because they thought they could do a better job of rearing them. By respondent's own admission, appellants originally obtained physical custody of C.C.F. because she and the father requested them to care for him, and that they obtained custody of J.D.F. as a result of the DFS removing her from her parents' custody. Through no fault of appellants, without any apparent ulterior motives and because of the natural parents' circumstances, they did what loving grandparents have done throughout the ages, they stepped into the breach to provide proper care for their grandchildren. As a result, at the time of the trial of this case, C.C.F. had been in appellants' custody for almost three years, and J.D.F. for approximately one and one-half years, or, in other words, for essentially their entire lives. Thus, there is substantial evidence which would indicate that a special or extraordinary circumstance existed which would rebut the parental presumption and warrant an award of third-party custody, provided such an award was determined to be in the best interests of the children.

■ In determining the best interests of children in making an award of their custody, § 452.375.2 sets out eight factors the trial court must consider. § 452.375.2; *Distler v. Distler*, 877 S.W.2d 184, 185 (Mo.App. 1994). Although the trial court here was not requested and did not make specific findings as to these eight factors, we are entitled to presume that the trial court considered all the evidence and made its award in the best interests of the child. *Hankins v. Hankins*, 920 S.W.2d 182, 187 (Mo.App. 1996). The trial court cited numerous examples of positive conduct and actions on the part of respondent to justify its finding that her present conditions would justify an award of custody to her as being in the children's best interests. The trial court, while duly noting her past troubles, found that respondent was presently gainfully employed, was living with her mother in a suitable home, was working on her G.E.D., and showed genuine interest in caring for and raising her children. An award of custody

based on such findings is consistent with the principle that "a parent's right to custody of his or her minor child is determined by existing conditions—past conditions are material only to the extent that they clarify and cast light on present conditions." *Hill*, 937 S.W.2d at 388, *citing Feemster*, 751 S.W.2d at 773.

■ The trial court has broad discretion in child custody matters, and we will affirm its award of custody unless we are firmly convinced that the children's welfare requires otherwise. *Replogle*, 903 S.W.2d at 554; *P.L.W.*, 890 S.W.2d at 690. "Moreover, because of the trial court's unique position for determining the credibility, sincerity, character, and other intangibles of the witnesses, we presume awards of custody are made in the best interests of the children." *Gismegian v. Gismegian*, 849 S.W.2d 201, 202 (Mo. App.1993). Greater deference is given to the trial court in child custody cases than in other types of cases. *Replogle*, 903 S.W.2d at 554; *Johnson*, 839 S.W.2d at 717. Thus, under our standard of review, we are not to reverse an award of custody as being against the weight of the evidence unless we are convinced that the award is dead wrong as being against the welfare and best interests of the children. If we believe, as we do here, that an award to respondent or appellants is supported by the record as being in the best interests of the children, then we cannot convict the trial court of error in its award of custody to respondent. Based on our thorough review of the record, we are unable to find that the trial court erred as appellants claim.

This case once again demonstrates the extreme difficulty the courts have in dealing with child custody matters. As in most custody cases, in this case there are very compelling reasons, factual and policy, for awarding custody of C.C.F. and J.D.F. to respondent or appellants. To say custody to one is right and to the other is wrong, defies logic, reason, or evidentiary support. In determining the best interests of children in the present, trial courts are forced, in many respects, to predict how present conditions will play out in the future, when, ultimately,

we know that the only sure way to determine the best interests of children is by the passage of time. Fortunately, our law recognizes this fact, allowing a trial court to modify custody awards in the future should its determination in the present prove to be inaccurate in the future.

Point denied.

### Conclusion

The judgment of the trial court awarding the sole legal and physical custody of C.C.F. and J.D.F. to respondent is affirmed.

All concur.