STATE of Missouri ex rel. DEPART-
MENT OF SOCIAL SERVICES, DIVI-
SION OF CHILD SUPPORT EN-
FORCEMENT, and Alexander Garrison
Ryan by Valerie Dawn Ryan, as Next
Friend, and Valerie Dawn Ryan, Appel-
lants,

v.

Mark MAHER, Respondent.

No. WD 55024.

Missouri Court of Appeals,
Western District.

Sept. 22, 1998.

Roger M. Gibbons, Osage Beach, for Appellants.

David A. Yarger, Versailles, for Respondent.

Before SPINDEN, P.J., and ULRICH and EDWIN H. SMITH, JJ.

1. All statutory references are to RSMo 1994,

EDWIN H. SMITH, Judge.

Valerie D. Ryan appeals the judgment of the circuit court modifying its paternity judgment of September 8, 1994, by awarding custody of the parties' son, Alexander Garrison Ryan (Alex), to his father, Mark Maher, the respondent, and ordering her to pay monthly child support in the amount of $218.

On appeal, the appellant advances five points claiming that the trial court erred in awarding primary physical custody of Alex to the respondent. She claims that the trial court erred because: (1) the evidence was insufficient to demonstrate, as required by § 452.410 [1] before modifying a "prior custody decree," that a substantial and continuing change of circumstances of the appellant or Alex had arisen after the entry of its paternity judgment of September 8, 1994; (2) the evidence was insufficient to demonstrate, as required by § 452.410 before modifying a "prior custody decree," that an award of custody to the respondent was in the best interests of Alex; (3) even assuming its award of custody to the respondent in its May 30, 1997, judgment was an initial award of custody, the trial court violated § 452.375 by excluding and failing to consider evidence concerning the circumstances of the parties and Alex which existed prior to the entry of its paternity judgment of September 8, 1994, and were relevant to a determination of his custody; (4) it violated § 452.375.6, prohibiting an award of custody based solely on a preference for a parent's superior economic, educational, and social background; and (5) it failed to consider all, and only, the relevant evidence presented at trial in that it failed to consider the home study of the appellant, which had been admitted into evidence, and improperly considered evidence outside the record consisting of the appellant's employment history and her receipt of unemployment compensation benefits.

We reverse and remand.

## Facts

Alex was born out of wedlock to the appellant on October 12, 1988. No legal action

unless otherwise indicated.

was taken to establish the identity of the father until January 21, 1993, when the appellant filed a three-count Uniform Parentage Act (UPA), §§ 210.817 *et seq.*, petition in the Circuit Court of Miller County seeking: (1) a determination and declaration of the existence of a father and child relationship between Alex and the respondent; (2) an award of child support; and (3) an award of past support and expenses. On September 8, 1994, the trial court entered its judgment declaring the respondent to be the natural father of Alex and ordering him to: (1) pay monthly child support to the appellant in the amount of $350; (2) provide health insurance coverage for Alex; and, (3) pay $1500 in past support and expenses. There was no provision in the judgment for physical custody of or visitation with Alex.

On October 10, 1995, the respondent filed a motion to modify the trial court's paternity judgment seeking physical and legal custody of Alex, alleging that a substantial change of circumstances had occurred since the entry of the trial court's September 8, 1994, judgment which warranted a transfer of custody. Specifically, the respondent alleged that: (1) he had married and established a substantial home with adequate resources to provide for Alex; (2) the appellant had failed to maintain Alex in a healthful and sanitary manner and had failed to provide for his dental care; (3) the appellant had failed to provide proper supervision for the upbringing of Alex; (4) the appellant had improperly enrolled Alex in his school's free lunch program, causing him to suffer an unnecessary social stigma; and (5) the appellant had refused to allow the respondent to visit or have contact with Alex.

On October 11, 1995, the appellant filed a counter-motion to modify the court's paternity judgment of September 8, 1994, also seeking physical and legal custody of Alex, subject to respondent's reasonable rights of visitation. On December 1, 1995, the trial court entered an order pursuant to a stipulation between the parties and in response to their respective motions for temporary custody and visitation which placed Alex in the temporary custody of the appellant and awarded the respondent temporary visitation. After a hearing on the merits, the trial court awarded primary physical custody of Alex to the respondent with visitation to the appellant, and ordered the appellant to pay monthly child support in the amount of $218.

This appeal follows.

## Standard of Review

As to an award of child custody, we will affirm the decision of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Flathers v. Flathers*, 948 S.W.2d 463, 465 (Mo.App.1997) (*citing Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). The trial court has broad discretion in child custody matters; as such, we will affirm its decision unless we are firmly convinced that the welfare and best interests of the child requires otherwise. *Flathers*, 948 S.W.2d at 465; *Replogle v. Replogle*, 903 S.W.2d 551, 554 (Mo.App.1995). Greater deference is given to the trial court in child custody cases than in other types of civil cases. *Flathers*, 948 S.W.2d at 465–66; *Replogle*, 903 S.W.2d at 554.

In our review, we view the evidence in the light most favorable to the decision of the trial court. *Rogers v. Rogers*, 923 S.W.2d 381, 383 (Mo.App.1996). "Because the trial court is in the best position to weigh all the evidence and render a judgment based on the evidence, the judgment is to be affirmed under any reasonable theory supported by the evidence." *Guier v. Guier*, 918 S.W.2d 940, 946 (Mo.App.1996). A judgment will be set aside as being "against the weight of the evidence" only when the appellate court has a "firm belief that the judgment is wrong." *Flathers*, 948 S.W.2d at 465.

## I.

In Point I, the appellant claims that the trial court erred in awarding primary physical custody of Alex to the respondent because the evidence was insufficient to demonstrate, as required by § 452.410 before modifying a "prior custody decree," that a substantial and continuing change of circumstances of the appellant or Alex had arisen

after the entry of its paternity judgment of September 8, 1994. Her claim is premised on her contention that the trial court erroneously treated its May 30, 1997, award of custody to the respondent as an initial award of custody when it should have been treated as a modification of a "prior decree of custody" pursuant to § 452.410. This contention is premised on her assertion that the trial court's September 8, 1994, paternity judgment was a "prior decree of custody" in that, by awarding child support to the appellant for Alex in this judgment, the trial court implicitly awarded his primary physical custody to her. Thus, in deciding this point, we must necessarily first determine whether, by awarding child support to the appellant for Alex in its paternity judgment of September 8, 1994, the judgment constituted a "prior decree of custody" under § 452.410, requiring, as the appellant claims, the trial court to have found a substantial and continuing change of circumstances before awarding custody of Alex to the respondent.

Although the parties did not request the trial court to make findings of fact and conclusions of law pursuant to Rule 73.01(a)(3), in its judgment entry, the trial court did find that "there ... [has not] been a previous custody order herein," which would indicate that it believed its May 30, 1997, award of custody was an initial award. However, it also found that "there have been substantial changes since the previous support order of September 8, 1994, so as to make said modification in the best interest of the child," which would indicate it believed that the award was a modification. As such, it is impossible to determine from the record with any certainty whether the trial court treated its May 30, 1997, award of custody to the respondent as an initial award or a modification of custody. In any event, it is up to this court to determine what should have been the correct nature of the proceeding, and this is so, even though, as the appellant points out, the respondent alleged a "change of circumstances" in his motion for custody.

Section 452.410, governing a modification of child custody, provides, in pertinent part, as follows:

1. Except as provided in subsection 2 of this section, the court shall not modify a *prior custody decree* unless it has jurisdiction under the provisions of section 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change had occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child....

(Emphasis added.) Hence, by its terms, this section only comes into play where a "prior custody decree" has been entered. *Flathers*, 948 S.W.2d at 467. Neither party disputes this fact. The controversy centers on whether the trial court's judgment of September 8, 1994, was a "prior custody decree" triggering § 452.410.

Pursuant to § 210.829, a UPA action "may be joined by separate document with an action for dissolution of marriage, annulment, separate maintenance, support, custody or visitation." § 210.829.1. And, if a custody action is joined, § 210.841 provides that the UPA judgment or order may contain a provision awarding custody, which is to be determined in accordance with the requirements of § 452.375 as an initial determination of custody. *M.L.H., by D.R.H. v. W.H.P.*, 831 S.W.2d 677 (Mo.App.1992); *Mildred v. Darryl*, 743 S.W.2d 111 (Mo.App.1988). Such a judgment or order would logically constitute a "custody decree," in that it makes provision for the custody of a child.

Our conclusion, that a judgment or order awarding custody in a UPA action is a custody decree, is in keeping with the definition of "custody decree," as found in § 452.445(3), which defines it as a "custody determination contained in a judicial decree or order made in a custody proceeding." A "custody determination" is defined in § 452.445(1) as a court decision, order, and instructions "providing for the custody of a child." A "custody proceeding" is defined in § 452.445(2) as a proceeding "in which a custody determination is one of several issues." An "initial decree" is defined in § 452.445(5) as the "first custody decree concerning a particular child." Admittedly, pursuant to § 452.445,

these definitions are limited to their use in §§ 452.440 to 452.550, known as the "Uniform Child Custody Jurisdiction Act," § 452.440, which generally provides the forum and notice requirements for custody actions. *McCoy v. Rivera*, 926 S.W.2d 78, 80 (Mo.App.1996). Nonetheless, we find them to be instructive and persuasive in determining that an initial custody award made in a UPA action and in accordance with § 452.375, constitutes a "custody decree." Hence, a modification of such a decree would be considered a "prior custody decree," subject to modification pursuant to § 452.410. With this as a given, it goes without saying, that § 452.410 will never come into play, unless and until there has been an initial determination of custody pursuant to § 452.375. The question here is whether such a determination was ever made as to Alex which would have required the trial court to follow § 452.410 in determining the respondent's motion for custody, as the appellant contends.

Any fair reading of the record indicates that in this case there was never an initial determination of custody pursuant to § 452.375 in the proceeding resulting in the UPA judgment of September 8, 1994. The pleadings of the parties reflect that neither the appellant nor the respondent joined the paternity action with a custody action, as allowed by § 210.829. And, in keeping with this fact, the trial court did not make any express orders of custody as to Alex in its judgment of September 8, 1994. Nonetheless, although admitting that the court never expressly granted her custody in its paternity judgment of September 8, 1994, the appellant still urges us to find that the trial court's judgment of September 8, 1994, constituted a "prior custody decree" for purposes of triggering § 452.410, contending that, by awarding child support to the appellant for Alex, it implicitly awarded her custody. This argument is without merit.

As stated, *supra*, § 210.841 does provide for an award of child support in a UPA action and sets out the procedure for its determination. And, while it is true that a trial court cannot award child support in a UPA action until paternity has been established, *Michigan Dep't of Soc. Servs., ex rel. D.H. v. K.S.*, 875 S.W.2d 597, 600 (Mo.App. 1994), § 210.841 does not expressly require that there also be a determination and an award of initial custody in accordance with § 452.375. Further, we find no implicit requirement in this respect. This is so in that § 210.829 permits a separate action for support to be joined with an action for a determination of paternity without joining an action for custody. Additional support for this proposition can be found by returning to the definition of "custody proceeding," as found in § 452.445(1), which specifically excludes from the definition any "decision relating to child support or any other monetary obligation of any person."

Given the foregoing, the only custody requirement we can ascertain entitling a parent to child support in a UPA action, where a request for custody has not been joined, would be the *status quo* custody that is being exercised at the time of the proceeding, such as was being exercised by the appellant here before the trial court's award of custody to the respondent. As such, the fact the trial court, in its judgment of September 8, 1994, awarded child support to the appellant, where child support was joined, but custody was not, did not constitute an implicit award of initial custody of Alex to the respondent pursuant to § 452.375 which would require any subsequent award of his custody to be done in accordance with § 452.410. In light of this fact, the trial court was not required to find a substantial and continuing change of circumstances, pursuant to § 452.410, before awarding custody of Alex to the respondent, as the appellant contends in her Point I.

Point denied.

Having determined that the trial court's award of custody in its May 30, 1997, judgment was an initial award of custody, not a modification, we will next address the appellant's Point III. This is so because, if we determine that the appellant is correct in contending in Point III that the trial court committed prejudicial error because it failed to follow the requirements of § 452.375 for determining initial custody in that he excluded and failed to consider relevant custodial circumstances of the parties and Alex that

existed prior to September 8, 1994, we would be required to reverse and remand for a new hearing without reaching the merits of the appellant's other claims on appeal.

## II.

■ In Point III, the appellant alleges that, even assuming the trial court's award of custody to the respondent in its May 30, 1997, judgment was an initial award of custody, it violated § 452.375 by excluding and failing to consider the relevant custodial circumstances of the parties and Alex which existed prior to the entry of its paternity judgment of September 8, 1994. As to this claim, the respondent contends that: (1) the appellant failed to make any offers of proof regarding the excluded evidence and, thus, failed to preserve the issue presented for our review; (2) even if the issue was properly preserved, the trial court's exclusion of the evidence in question was not error; and (3) even if the exclusion of the evidence was error, it was not prejudicial error requiring reversal. Given the foregoing contentions of the parties, the first issue we must decide is whether the appellant properly preserved the issue presented.

■ It is clear from the record that the appellant did fail to make any offer of proof regarding the excluded evidence. "Normally, an appellate court will not review evidence excluded by the trial court unless a specific and definite offer of proof had been made at trial." *State Farm Mut. Auto. Ins. Co. v. DeCaigney*, 927 S.W.2d 907, 911 (Mo.App. 1996). However, there is a narrow exception to the general rule that appellate courts will not review excluded evidence without a specific and definite offer of proof. *Darnaby v. Sundstrom*, 875 S.W.2d 195, 198 (Mo.App. 1994). "The requirement of a formal offer of proof can be dispensed with where the nature of the witness's testimony is clear to all parties as well as to the court, and where the purpose served by the testimony is likewise clear." *Hutson v. Blazin' Saddle Entertainment, Inc.*, 930 S.W.2d 70, 72 (Mo.App.1996). However, "the objection must be to a specific category of evidence rather than to specific testimony." *In Interest of L.J.M.S.*, 844 S.W.2d 86, 95 (Mo.App.1992).

The facts that would support the application here of the foregoing exception to the "offer of proof rule" are as follows: The record reflects that the respondent's trial counsel was objecting to any and all evidence the appellant sought to introduce regarding circumstances of the parties and Alex that existed prior to the court's paternity judgment of September 8, 1994, or, in other words, was objecting to a specific category of evidence rather than to specific testimony. Given the fact that the respondent basically had no contact with Alex for approximately the first six years of his life, it was not surprising that the respondent's counsel would want to exclude such evidence. On the other hand, given the fact that the appellant was the sole parental caregiver during this same period of time, it is equally clear why she wanted this category of evidence considered. It is also clear from the record that the trial court, counsel, and the parties had a clear understanding of what issues the excluded evidence would have addressed. Under these circumstances, we believe that the exception to the offer of proof rule would apply such that the issue of whether the trial court committed reversible error in excluding the custodial circumstances of the parties and Alex that existed prior to September 8, 1994, was properly preserved for appeal. Having determined that the issue was properly preserved for appeal, we now turn to the question of whether the court's exclusion of the evidence in question was, in fact, error.

■ Although a modification of custody pursuant to § 452.410 is limited to circumstances that have arisen "since the prior decree or that were unknown to the court at the time of the prior decree," there is no such limitation in an initial determination of custody under § 452.375. In fact, in an initial determination, the trial court is mandated in § 452.375 to examine all relevant factors bearing on a determination of the best interests of the child, including the eight specific factors set forth in the statute. In the case at bar, two of the eight factors would have necessarily dealt with the custodial circumstances of the parties and Alex that existed prior to September 8, 1994. Those factors are:

(3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;

(4) The child's adjustment to his home, school, and community.

§ 452.375.2. As such, in the context of factors (3) and (4), the trial court was required to consider the relevant custodial circumstances of the parties and Alex that existed prior to September 8.

The record would reflect, and at oral argument the respondent's counsel admitted, that his objections to the appellant's attempts to introduce evidence of custodial circumstances that existed prior to September 8, 1994, were, at least in part, based on his contention that they were irrelevant to the court's custody determination. The record would also demonstrate that the trial court sustained the respondent's relevancy objections, stating in general that it was not concerned with circumstances that existed prior to September 8, 1994. Thus, as to factors (3) and (4), the record would reflect that the trial court erroneously excluded evidence that it was required to consider pursuant to § 452.375.2 in determining the initial custody of Alex. However, the fact that it was error for the trial court to exclude this does not end our inquiry. We must still determine whether the trial court's error was reversible error.

To be reversible error, the appellant must demonstrate that she was prejudiced by the trial court's erroneous action. *Gage v. Morse*, 933 S.W.2d 410, 420 (Mo.App. 1996). Prejudice occurs when the error committed by the trial court materially affects the merits of the action, the result, or the outcome of the trial. *Id.* at 420–21. In order to determine whether the trial court's error here was prejudicial, in the context of excluded evidence bearing on factors (3) and (4) of § 452.375, we must logically examine why the appellant was seeking to introduce such evidence. As to factor (3), the appellant naturally wanted to introduce evidence of the parents and Alex that existed prior to September 8, 1994, in order to show that from his birth until the trial court's paternity judgment of September 8, 1994, almost six years

later, she interacted with Alex on a daily basis, was his sole parental caregiver, and provided him with an opportunity to interact and bond with his maternal grandmother. As to factor (4), the appellant naturally wanted to introduce such evidence in order to demonstrate that Alex was well adjusted to his home, school, and community. This category of evidence clearly would have weighed in the appellant's favor as to any initial determination of Alex's custody. Therefore, although it is impossible to predict exactly what effect this type of evidence would have had on the trial court's decision in awarding Alex's custody, it is clear that this evidence was relevant and would have weighed in the appellant's favor. As such, we can reasonably conclude that the exclusion of this evidence hindered the appellant's being awarded custody of Alex and may have materially affected the outcome of the proceeding. As such, we find that the trial court's exclusion of the evidence in question was prejudicial to the appellant, requiring us to reverse and remand the cause to the trial court for a new trial.

Given the fact that we are reversing and remanding this case for a new hearing, we need not address the other points raised by the appellant in her appeal.

### III.

The appellant filed a motion for attorney fees and costs pursuant to § 452.355 and Rule XXIX of the Western District Court of Appeals Special Rules, which was taken with the case. Given our disposition here, we remand this motion with the case for the trial court's determination.

### Conclusion

The May 30, 1997, judgment of the circuit court, awarding primary physical custody of Alex to the respondent, with visitation to the appellant, and ordering the appellant to pay monthly child support in the amount of $218, is reversed and the cause is remanded to the trial court for an immediate new trial to be conducted in accordance with this opinion;

and, to preserve the *status quo*, as it existed prior to the circuit court's attempted award of custody to the respondent, the trial court is directed to immediately enter an order placing temporary custody of Alex with the appellant pending the new trial and reinstating the child support award to the appellant from the respondent of $350 per month to be effective immediately upon the appellant's receiving temporary custody of Alex.

All concur.