In the Missouri Court of Appeals
 Eastern District
 DIVISION TWO
K.T.L. BY HER NEXT FRIEND, K.L., ) No. ED109375
AND K.L. INDIVIDUALLY, )
 )
 Respondents )
 ) Appeal from the Circuit Court
 ) of Franklin County
 vs. ) Cause No. 20AB-DR00025
 )
A.G., ) Honorable Joseph W. Purschke
 )
 Appellant. ) Filed: December 28, 2021

 OPINION
 Third-Party Petitioner A.G. (Appellant) appeals the trial court’s judgment awarding sole

custody and visitation of K.T.L. (the minor child) to the minor child’s biological father, K.L.

(Respondent or Father). Pursuant to § 452.375.5(5)1, the Franklin County circuit court found

Father was fit, suitable, and able to serve as the minor child’s custodian, the minor child’s

welfare did not require an award of third-party custody, and the minor child’s best interests were

served by awarding Respondent custody. On appeal, Appellant claims the welfare of the minor

child requires an award of third-party custody. We disagree and affirm.

 Factual and Procedural Background

1
 All statutory references are to RSMo. 2019 unless otherwise noted. This statute was amended in 2021 but those
amendments are inapplicable here.
 The minor child was born on December 8, 2008, to Mother and Respondent, who were

never married. Respondent was not present during the early years of the minor child’s life and

she lived almost exclusively with her mother until she died on November 29, 2019. Appellant

and Mother were friends, living together during the first four years of the minor child’s life.

 On December 3, 2019, Appellant filed a Petition for Temporary Restraining Order,

requesting that the court prevent Respondent, the biological father, from taking custody of the

minor child from Appellant.2 Subsequently, the Franklin County circuit court entered a

Temporary Restraining Order for a defined period, awarded Appellant temporary custody of the

minor child and set the matter for an evidentiary hearing.

 However, on December 11, Respondent filed his Petition for Paternity, Child Custody

and Visitation in another jurisdiction, Cole County, where he resided.3 Shortly thereafter, he also

moved for temporary custody and visitation of the minor child. On March 6, 2020, the court

ruled, awarded custody and defined visitation periods to both Appellant and Respondent pending

the trial outcome. Subsequently, the Temporary Restraining Order was dismissed without

prejudice by the court. Then, Appellant filed her Counter Petition for Third-Party Custody of the

Minor Child on July 7.4 On multiple dates between July and September, the parties presented

evidence and made their arguments before the trial court.

 Respondent is identified as the biological or natural father of the minor child on the birth

certificate although he was not actively involved with the minor child during her earliest years.

2
 Appellant filed her Petition for a Temporary Restraining Order in Franklin County circuit court under cause 19AB-
CC00254.
3
 In the interests of judicial economy, Father’s petition under cause 19AC-FC01574 was transferred to Franklin
County circuit court so all issues could be resolved in the same court.
4
 Appellant also moved to adopt or, in the alternative, receive guardian status of the minor child under cause 19AB-
JU00335. Like the Temporary Order of Protection, this matter was also dismissed, leaving only Respondent’s
Petition for Paternity and Appellant’s Counter Petition for Third Party Custody as unresolved.

 2
Much of this time he was actively working and serving as the custodial parent for three

additional daughters from other relationships. When testifying, Respondent conceded his

shortcomings as a father and acknowledged his limited presence in his child’s life during her

earlier years but blamed Mother and Appellant for discouraging his access to the minor child on

multiple occasions. Further, he believed that Appellant loved the minor child and expressed a

willingness to allow Appellant to remain in her life if awarded sole legal and physical custody.

 As her health declined, Mother suffered from diabetes and related complications. In her

testimony, Maternal Grandmother described Father as a “good father,” further asserting that the

Appellant will prevent the minor child from continuing any type of relationship with family

members including Respondent and Maternal Grandmother if awarded custody.

 While living with Mother and the minor child, Appellant initially developed her

friendship with the minor child that continued after Appellant left the residence. Additional

evidence reveals that Appellant interfered with Respondent’s relationship with the minor child

and she discouraged the minor child from connecting with Father and family members.

 More specifically, Appellant made plans for the minor child or otherwise ensured the

minor child was unavailable during Father’s visitation schedule and she texted the minor child

continuously when the minor child was with Father or other family members. Appellant listed

herself as the primary legal guardian for the minor child at her school and declined to identify

Father as a guardian, emergency contact, or even as someone permitted to transport the minor

child from school. After the Temporary Restraining Order was no longer in effect, Appellant

failed to notify the school. Generally, Appellant communicated poorly with Father and often

delayed responding when Father contacted her to discuss visitation. Additionally, Appellant did

not inform Father about the minor child’s health developments. On other occasions, Appellant

 3
blocked Respondent’s cell phone number on Appellant’s phone and even removed the minor

child from Respondent’s home without his knowledge or consent but she claims that Mother

directed this conduct on both occasions.

 Ultimately, the trial court found Appellant did not meet her burden of proof under §

452.375.5(5)(a), and denied third-party custody. She appealed, claiming the trial court

misapplied the “welfare” prong of § 452.375.5(5). Specifically, Appellant argues she presented

evidence of a “special or extraordinary circumstance” triggering consideration under the

“welfare” prong but that the trial court neglected to make such a finding or analysis.5 Based on

her brief however, Appellant ostensibly argues that the trial court decided this matter as against

the weight of the evidence, rather than misapplying the law. Thus, this court will focus on the

merits of the former claim.

 Standard of Review

 “This Court will affirm the trial court’s decision as to an award of child custody unless

there is no substantial evidence to support it, it is against the weight of the evidence, or it

erroneously declares or applies the law.” K.M.M. v. K.E.W., 539 S.W.3d 722, 732 (Mo. App.

E.D. 2017). “The trial court has broad discretion in child custody matters, and we will affirm its

award of custody unless we are firmly convinced that the children’s welfare requires otherwise.”

Flathers v. Flathers, 948 S.W.2d 463, 471 (Mo. App. W.D. 1997).

 A reviewing court presumes a trial court decides custody matters in the best interests of

the child, especially after recognizing the trial court’s ability to assess witnesses and determine

5
 However, we note that the trial court specifically concluded in its judgment that “the welfare of the child does not
require an award of third-party custody,” indicating the court did consider the “welfare” prong when reaching a
decision.

 4
credibility. Id. Further, the standard of review prohibits the reviewing court from reversing a

custody determination unless the decision is against the weight of the evidence or is contrary to

the welfare and best interests of the children. Id. at 471.

 Discussion

 The controlling statute in this case, § 452.375.5(5)(a), provides:
 When the court finds that each parent is unfit, unsuitable, or unable to be a custodian, or
 the welfare of the child requires, and it is in the best interests of the child, then custody,
 temporary custody or visitation may be awarded to any other person or persons deemed
 by the court to be suitable and able to provide an adequate and stable environment for the
 child.
 “Section 452.375.5 authorizes a cause of action for individuals seeking third-party rights

to custody or visitation of a minor child.” Conoyer v. Kuhl, 562 S.W.3d 393, 397 (Mo. App. E.D.

2018) (citing K.M.M., 539 S.W.3d at 735-36). “This action is not intended to be an avenue to

custody or visitation rights available to any third party that comes along.” Id. (internal quotations

omitted).

 Under § 452.375.5, there is a rebuttable presumption that the natural parent is fit and

suitable to make decisions consistent with the child’s welfare and best interests. K.M.M., 539

S.W.3d at 736; Flathers, 948 S.W.2d at 466. To rebut this presumption, the third-party must

show that either the natural parent is unfit, unsuitable, or unable to be a custodian (the “fitness”

prong) or the welfare of the child requires that custody be awarded to a third-party (the “welfare”

prong). See Jones v. Jones, 10 S.W.3d 528, 535 (Mo. App. W.D. 1999).

 The parties in this matter have stipulated Respondent is fit and suitable to serve as a

custodian for the minor child under § 452.375.5(5)(a). The initial issue before us is whether

Appellant met her burden in rebutting the natural-parent presumption under the “welfare” prong.

Assuming she has done so and overcome this initial hurdle, then the court proceeds to the next

 5
issue, examining the relevant factors to determine whether third-party custody or visitation is in

the child’s best interests. K.M.M., 539 S.W.3d at 736. Here, proceeding to the second issue is

unnecessary because we conclude that Appellant has unsuccessfully rebutted the parental

presumption under the welfare prong.

 Missouri case law offers specific guidance on what is required to overcome the parental

presumption under the statute’s “welfare” prong or if the welfare of the child requires third-party

custody. § 452.375.5(5)(a). In particular, there must be proof of a “special or extraordinary

circumstance” making it in the child’s best interest to award custody to a third-party.” K.M.M.,

539 S.W.3d at 736. The analysis required to determine whether the “welfare” prong is met is

highly fact-sensitive and, accordingly, each case turns on the unique factual situation. Conoyer,

562 S.W.3d at 399; K.M.M., 539 S.W.3d at 737.

 Upon weighing the facts and examining whether special and extraordinary circumstances

exist to determine if the parental presumption is overcome, the court is compelled to consider

conduct, including the acts of the third-party seeking custody. When acknowledging the

significance of bonding between the third-party and the minor child, the court must also

recognize that public policy discourages depriving a parent of the parental presumption, where

the third-party seeking custody behaved deceptively or acted with “unclean hands.” Jones, 10

S.W.3d at 539. The welfare of a child certainly does not require separation from her willing and

able natural parent when the evidence demonstrates a third-party petitioner “manipulated the

situation to manufacture a special or extraordinary circumstance in order to gain custody or

visitation.” K.M.M., 539 S.W.3d at 738; see also Jones, 10 S.W.3d at 539; Flathers, 948 S.W.2d

at 470-71.

 6
 This seems most applicable to the current matter with bountiful facts bolstering the trial

court’s decision-making. While Appellant presented some evidence of a relationship between her

and the minor child, we cannot overlook the considerable amount of evidence in the record of

Appellant’s efforts to discourage a relationship between the Respondent and the minor child. For

example, Appellant declined to list Father as a guardian, emergency contact, or even someone

allowed to transport the minor child from school. Even more troubling, she did not notify the

school when the Temporary Restraining Order was no longer in effect, making the school a

potential accomplice in unjustifiably blocking Respondent’s contact with his daughter.

 The record is replete with examples suggesting that Appellant’s conduct was dilatory at

best and destructive at worst to the parent-child relationship. She made plans or otherwise made

the minor child unavailable to Father during many of his visitation periods and texted the minor

child continuously over the course of at least some visitation periods when he successfully

managed to spend time with his daughter. Unfortunately for Appellant and her claim, these

specific, enumerated examples portray her as disregarding the court ordered visitation,

discouraging the minor child’s contact with Respondent and disrupting Father’s attempts to

foster their relationship. Equally problematic to her efforts to overcome the parental

presumption, she admitted to removing the minor child from Father’s home without his

knowledge or permission although she asserts that she did so with Mother’s complicity.

 Respondent is far from perfect. During trial, he acknowledged his shortcomings and

expressed his regret about his absence during the minor child’s earliest years. And despite

Appellant’s efforts to frustrate his contact with his daughter, he expressed a willingness to allow

Appellant to remain in the minor child’s life if the court awarded him sole legal and physical

 7
custody. This commitment reflects well on his parental maturity and, perhaps more to his credit,

his willingness to remain open-minded when making decisions in his daughter’s best interests.

 Arguably, the evidence reflects that Appellant was present during the earliest years in the

life of the minor child including times when Respondent was not. Additionally, she can be

commended for attempting to foster a positive influence on the minor child and further

developing their friendship at a critical time in the minor child’s life following Mother’s death.

Undoubtedly, Appellant’s intentions are noble and her concern for the minor child is

praiseworthy. Under any circumstance, the court recognizes the value of conducive third-party

relationships promoting beneficial outcomes, nurturing personal and academic development and

advancing the worthwhile interests of any minor child. While this advantageous adult influence

is welcome and potentially significant in the life of any minor child, it does not necessarily invite

third-party custody or overcome the parental presumption.

 “The interest of a parent in the care, custody, and control of her child is one of the oldest

fundamental liberty interests recognized as protected against government interference by the

Fourteenth Amendment’s due process clause.” K.M.M., 539 S.W.3d at 736. “A natural parent’s

right to custody of their child is superior to that of third parties.” Id.

 While Appellant’s commendable conduct is notable, so is the problematic conduct

previously described. Specifically, her collective conduct bars her from using her relationship

with the minor child as a basis for overcoming the natural-parent presumption and Appellant

effectively fails to prove that a “special or extraordinary reason or circumstance” warrants third-

party custody.

 8
 Conclusion

 We hold the record supports the trial court’s judicious decision denying Appellant’s

request for third-party custody under § 452.375.5(5)(a). Affirmed.

 _______________________________
 Thomas C. Clark, II, Judge

Robert M. Clayton III, P.J., concurs.
Gary M. Gaertner, Jr., J., concurs.

 9